# EXHIBIT EEE

# In The Matter Of:

*INTELLECTUAL VENTURES I LLC, v.*
*CITIGROUP, INC., CITICORP,*

---

*March 26, 2015*

---

*Southern District Court Reporters*

Original File f3qgintc.txt

**Min-U-Script® with Word Index**

INTELLECTUAL VENTURES I LLC, v.
CITIGROUP, INC., CITICORP,

March 26, 2015

---

f3qgintc                                                          Page 1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     INTELLECTUAL VENTURES I LLC,
 3   and INTELLECTUAL VENTURES II
     LLC,
 4
              Plaintiffs,
 5
          v.                    14 Civ. 4638 (AKH)
 6
 7   CITIGROUP, INC., CITICORP,
     CITIBANK, N.A.,
 8
              Defendants.
 9   ------------------------------x
                                   New York, N.Y.
10                                 March 26, 2015
                                   10:45 a.m.
11   Before:
                    HON. ALVIN K. HELLERSTEIN,
12
                                       District Judge
13
                       APPEARANCES
14
     DUNNEGAN & SCILEPPI LLC
15        Attorneys for Plaintiffs
     BY:  WILLIAM DUNNEGAN
16          -and-
     FEINBERG DAY ALBERTI & THOMPSON LLP
17   BY:  SAL LIM
          CLAYTON THOMPSON
18        YAKOV ZOLOTOREV
          NICHOLAS BOHL
19
     WILMER CUTLER PICKERING HALE & DORR LLP
20        Attorneys for Defendants
     BY:  GREGORY H. LANTIER
21        OMAR A. KHAN
          MONICA GREWAL
22        RICHARD A. CRUDO
            -and-
23   KIRKLAND & ELLIS LLP
     BY:  KENNETH R. ADAMO
24        BRENT RAY
25
```

---

f3qgintc                                                          Page 2

1       (In open court)

2       THE COURT: I'd like to work off the schedule, the

3   combined chart of proposed terms of constructions, unless

4   there's good reason to do something differently.

5       Mr. Lim.

6       MR. LIM: That's fine with Intellectual Ventures, your

7   Honor.  We can go in that order.

8       THE COURT: Mr. Lantier.

9       MR. LANTIER: Yes, your Honor.  That's how we planned

10  to proceed as well.

11      THE COURT: The first issue is the term various claims

12  of patent '271, "parallel data compression algorithm." IV

13  suggests "an algorithm in a parallel compression engine that

14  compresses more than one data unit at a time."

15      Citibank suggests "an algorithm that compresses data

16  across multiple processing units at the same time."

17      I don't really understand the substantive difference

18  between the two proposals, why, Mr. Lim.  Do you?

19      MR. LIM: Mr. Zolotorev will address that issue on

20  behalf of Intellectual Ventures, your Honor.

21      THE COURT: Mr. Zolotorev.

22      MR. ZOLOTOREV: Your Honor, I think the substantive

23  difference with respect to this claim term is that the

24  defendants' construction introduces the term "processing

25  units," and we believe that term is not supported by the

---

f3qgintc                                                          Page 3

1   intrinsic record.

2       Both parties' constructions have commonality in that

3   both parties' constructions for this term recognize that the

4   specification tells us that the parallel compression engine has

5   to work on more than one piece of data at a time, and that's

6   reflected by this recitation of the time component in both

7   parties' constructions.

8       THE COURT: That's differently phrased.  You want

9   "more than one data unit at a time."  Citibank wants "at the

10  same time."

11      I think "at the same time" is too restrictive.  It's

12  clear to me that parallel is a term that's different from

13  sequential or serial, and that has to come across, but "at the

14  same time" I think is unduly restrictive.

15      Let me find the claim.

16      MR. ZOLOTOREV: Your Honor, perhaps we can put up

17  slide 4 which has the representative claim.

18      THE COURT: I'd rather use the printed version, but

19  you can put up whatever you want.  The claim is "A data

20  compression system comprising: a plurality of parallel

21  compression engines, wherein each of the plurality of parallel

22  compression engines" -- I don't know what plurality means, by

23  the way.  I think it's an excess term that confuses rather than

24  explains.  It means more than one, few, many, but plurality

25  doesn't tell me anything.

---

f3qgintc                                                          Page 4

1       "...operates independently and implements a parallel

2   data compression algorithm," so it means that each processing

3   unit works independently of another.

4       MR. ZOLOTOREV: That's correct.

5       THE COURT: You could think about this in terms of

6   parallel wiring versus wiring in series; each parallel wire can

7   be switched on and off without affecting another.  So, if you

8   have this room lit in parallel series, some lights can be off

9   and some lights can be on, and that means an

10  independently-processing system, and the same with what you're

11  doing.

12      So what's happening here is that the unit of data that

13  comes in from someplace else is accelerated at different speeds

14  in different lines, different parts of the processing system.

15  It comes out at the end in some coherent fashion.  I think that

16  is what it means claimed.  And the trick is to define these

17  terms in a way that is useful to each of you but not preclusive

18  of one against the other.

19      Continuing: "...wherein each of the plurality of

20  parallel compression engines is operable to: receive a

21  different respective portion of uncompressed data; and compress

22  the different respective portion of the uncompressed data using

23  the parallel data compression algorithm to produce a respective

24  compressed portion of the uncompressed data; and output the

25  respective compressed portion; wherein the plurality of

---

INTELLECTUAL VENTURES I LLC, v.
CITIGROUP, INC., CITICORP,

March 26, 2015

| f3qgintc | Page 5 |
|---|---|

1 parallel compression engines are configured to perform said
2 compression in a parallel fashion to produce a plurality of
3 respective compressed portions of the uncompressed data."
4      This is better than Ambien. Anyone who needs sleep,
5 read this three times.
6      So I'm asked to define the term "parallel data
7 compression algorithm." And I think I'll take Citibank's
8 construction:  An algorithm that compresses data across I would
9 say a number of processing units at approximately the same
10 time.
11      MR. ZOLOTOREV: Your Honor, may I be heard on that.
12      THE COURT: Yes. What I want to do now is
13 extemporaneously tell you where my mind is. I will, in due
14 time, hopefully in a short time, express this in a tentative
15 order that I would plan to distribute to you and then hold
16 another session where you could react. I want to express my
17 view that I don't feel I understand these conventions at this
18 point in time well enough to have confidence in mostly anything
19 I do, so I'd like to do it in a suggestive way and see if it
20 makes sense.
21      So, your thought.
22      MR. ZOLOTOREV: The thought, the issue that we have,
23 the primary issue that we have with Citibank's construction,
24 even as modified by your Honor, is it still unnecessarily
25 recites processing units. This is not a term that is found

| f3qgintc | Page 6 |
|---|---|

1 anywhere in the claims or anywhere in the specification.
2 Whereas, the construction that we propose, your Honor, if we go
3 to slide 6, is based on a very clear statement in the
4 specification where the inventors tell us exactly what this
5 algorithm is. They say the parallel compression algorithm
6 operates on parallel of symbols at a time and that is
7 essentially our construction.
8      And they also said, and this is where they're
9 distinguishing --
10      THE COURT: How about, Mr. Zolotorev, instead of the
11 words "across multiprocessing units," I say "for processing by
12 several processing units"?
13      MR. ZOLOTOREV: Your Honor, again, this is the same
14 exact issue. The term "processing units" is superfluous, it's
15 not in the claims, it's not anywhere in the specification, and
16 therefore it is completely divorced from the intrinsic record.
17 And that is the issue we have.
18      We have this very clear statement in the specification
19 as to what the algorithm is, the compression algorithm is, and
20 the inventors make this statement and they distinguished the
21 prior art. That's the very next line. They said this is how
22 this is different than the prior art serial algorithm, so it
23 tells all we need to know about what this term means.
24      MR. RAY: If I may respond to that.
25      THE COURT: Yes, Mr. Ray.

| f3qgintc | Page 7 |
|---|---|

1      MR. RAY: Thank you, your Honor. The reason why
2 processing units is correct is because the specification shows
3 us in fairly clear detail what is meant contrasting serial
4 algorithms and parallel algorithms.
5      THE COURT: Can you do away with slides and just refer
6 to specifications?
7      MR. RAY: Absolutely. Your Honor, the specification
8 here in the '271 patent incorporates a reference.
9      THE COURT: Column?
10      MR. RAY: You're going to actually need to refer to an
11 exhibit to our brief.
12      THE COURT: I'm dealing with primary objects. I'm
13 dealing with a patent which has specifications and claims.
14 Tell me where in the specifications you want me to look.
15      MR. RAY: Your Honor, if you'll refer to the top of
16 column 7.
17      THE COURT: Yes.
18      MR. RAY: There's a section for incorporation by
19 reference. There's a patent number 6,208,273. In that
20 specification, which is incorporated expressly by reference
21 into the '271 patent, is found a very clear drawing of what is
22 meant between a serial compression algorithm and a parallel
23 compression algorithm.
24      THE COURT: But we're not dealing with that in this
25 definition.

| f3qgintc | Page 8 |
|---|---|

1      MR. RAY: Your Honor, a specification that is
2 incorporated by reference as explicitly as this one is deemed
3 to be part of the specification of the same patent. And we
4 have attached this patent as an exhibit to our brief, and I'm
5 happy to hand up a copy if you'd like, your Honor.
6      THE COURT: Don't. Okay. I'll work it out. Thanks.
7 Next point.
8      MR. RAY: The next point I wanted to make, your Honor,
9 is a term of the construction that is not found in the spec, we
10 disagree. And I would contrast IV's construction which refers
11 to a data unit; that is, likewise, not found in the
12 specification as well. The proposed construction that you had
13 originally set forth, Citibank would agree with.
14      MR. ZOLOTOREV: Your Honor, may I be heard.
15      THE COURT: Yes. I'll tell you what. Sit down; that
16 way you won't block your colleagues in the back.
17      MR. ZOLOTOREV: Your Honor, this last criticism of the
18 term data unit I think is misplaced. It is clearly present in
19 the specification. The specification uses the term "unit of
20 data." That's at column 8 lines, 29 through 31. And,
21 likewise, the specification provides us with a number of
22 different examples of what a unit of data to be compressed
23 would be in different embodiments. Some embodiments refer to
24 symbols, others operate on characters, others operate on units
25 of data that could be bytes or several bytes that are variable

INTELLECTUAL VENTURES I LLC, v.
CITIGROUP, INC., CITICORP,

March 26, 2015

1   in length.  And then, again, for decompression, we see the
2   specification in certain embodiments using the term "token"
3   which we discussed yesterday, and that is the symbol that is
4   assigned to a compressed symbol, so that becomes a token.
5         THE COURT:  I have another definition.  I tell you, I
6   want these definitions, to the greatest extent possible, to
7   avoid using terms that in turn need to be defined.  There's no
8   reason to define something for informational purposes in a way
9   that creates another ambiguity.
10        Here is another proposal:  An algorithm that causes
11  aspects of information which are to be encrypted to pass
12  through various processing units at approximately the same
13  time.
14        Let's go on to the next.  We'll give that further
15  thought and come out with a tentative order, and then you can
16  react to it.
17        The next term is "parallel data decompression
18  algorithm."  It's the same point.  I think it's the same
19  definition.  Let's go on now to patent '081.
20        The parties want me to take a position as to whether
21  preambles are limiting or not limiting.  It has nothing to do
22  with Markman.  I'm not doing it.  You'll argue the way you
23  want.
24        The second is the phrase "primary record type," claims
25  1, 2 and others.  The parties differ on whether or not there

1   should be a reference in the definition as IV proposes "to
2   contain data extracted from XML documents."  The problem here
3   is that the term that I'm asked to define is not fairly
4   presented.  What I'm asked to define is a longer phrase, not
5   just primary record types, but primary record types for the XML
6   documents, and so the term which is to be defined is different
7   from the way it's set out to me.  And then if I do that,
8   there's agreement.  "A data type that defines a data
9   structure."  However, I don't think that's very helpful.
10        So, what is connoted here I think is the beginning of
11  a hierarchy.  If one thinks of an outline, it's the major
12  proposition to be followed by various subsidiary propositions,
13  and as I understand what is meant by "primary record type," it
14  makes reference to the major proposition or a number of major
15  propositions appended to which would be subsidiary
16  propositions.
17        Do I have it right, Mr. Lim?  Who is going to speak to
18  me on this one?
19        MR. THOMPSON:  Mr. Thompson, and I should stay seated?
20        THE COURT:  Yes, you should stay seated.
21        MR. THOMPSON:  Thank you.  Very close and I think very
22  apt, but the primary record types are more like the factual
23  underpinnings in your analogy and the management record type
24  would be the heading.  You have the right idea; it's just that
25  primary record types are kind of in --

1         THE COURT:  You're reversing what I'm thinking.
2         MR. THOMPSON:  Exactly.
3         THE COURT:  So you have "primary," which connotes
4   superiority ahead of "management," which connotes something
5   utilitarian implementing something that's primary.
6         MR. THOMPSON:  If you think of an outline, though,
7   like of an argument, the primary things I'm saying are the
8   points I'm making like here's a fact, here's a fact, and here's
9   a fact, and I manage those facts with a heading, that would
10  analogize the phraseology of that.
11        THE COURT:  No.  The reverse, just the reverse.  When
12  you're arguing the points in the brief, the points in the brief
13  are the major headings, primary headings; and the arguments are
14  subsidiary.
15        MR. THOMPSON:  Well, I'd say the headings under which
16  they appear is the management of them, is the management of
17  those primary points.
18        THE COURT:  The primary points in your analogy are the
19  management of a more major point, namely I should win, here are
20  the primary reasons, one, two, three, four, five; and to
21  explain the primary reasons, here are the subsidiary reasons.
22  The whole concept is a management, which leads me to believe
23  that we have a nonsensical arrangement of words here, phrases.
24  We can't do that.
25        Line 20, column 18 states "organizing instances of the

1   plurality of primary record types into a hierarchy to form a
2   management record type; defining a dynamic document for display
3   of an instance of the management record type through a user
4   interface."
5         Claim 2, lines 30 to 35 may help:  "A method as in
6   claim 1, wherein an instance of a one of the primary record
7   types includes or points to a relationship database table of
8   that primary record type; and wherein the instance of the
9   management record type points to instances of the primary
10  record types."
11        Three, "A method as in claim 1, wherein the management
12  record type defines business objects and the instances of the
13  management record type comprises the business objects."
14        I can't make heads or tails of this.  Mr. Thompson,
15  help me with the specifications.
16        MR. THOMPSON:  Very good, your Honor.  So, you have to
17  think about the patent as building a structure and it's going
18  to start with, let's say, bricks, and as the bricks are placed
19  and they're formed, they are then mortared into place with the
20  management record type.  So, these bricks are just the pieces
21  of data that came -- the little components of data that came
22  out of the XML document.  So, you take the XML document and you
23  make it into little pieces, little bricks, while maintaining
24  how the data related to itself, the little pieces related to
25  the other little pieces in the XML, you maintain that

INTELLECTUAL VENTURES I LLC, v.
CITIGROUP, INC., CITICORP,

March 26, 2015

| | |
|---|---|
| f3qgintc Page 13 | f3qgintc Page 15 |

**Page 13**

1 relationship by the arrangement of the bricks.  And then the
2 management record type, with its pointers, solidifies or puts
3 that in concrete so that that information about the arrangement
4 of the primary record types is maintained in the management
5 record type.
6 THE COURT: What in the specifications let's you say
7 these things?
8 MR. THOMPSON: It's described succinctly twice.  What
9 I'd like to do is, I'd like to go to column 3, line 66.  And
10 this description of what I just discussed goes up to about
11 column 4, line 23, if I could walk through it with you.
12 THE COURT: Let me read it.
13 MR. THOMPSON: Okay.
14 THE COURT: So the primary record types are the data
15 components in an XML document.
16 MR. THOMPSON: Correspond to it; they're not one in
17 the same, but --
18 THE COURT: All right.  Say "correspond."
19 MR. THOMPSON: Well, I say that because the data
20 component -- the primary record type is not so much in the XML
21 document as it is of data copied from the XML document.  So,
22 it's a new thing separate from the XML.
23 THE COURT: You copied the XML data components into
24 normalized data objects.
25 What does that mean?

**Page 14**

1 MR. THOMPSON: Normalized means that the XML data
2 components are analyzed to take out duplicates at a very high
3 level.  That's what normalized means.
4 THE COURT: So what you're suggesting here, I think,
5 is that the information or data units in a number of business
6 documents, for example, invoices, bills of material, purchase
7 orders and the like are collected and arranged in a way that is
8 conducive to what users want and the information taken from the
9 invoices, bills of material and the like are the primary record
10 types and the collection and arrangement is the management
11 record type?
12 MR. THOMPSON: I think that's a fair summary of what
13 the primary record type is.
14 THE COURT: Defendants.
15 MR. RAY: Your Honor, I think it's at this point in
16 time important to take note of the difference between data
17 types and instances of data types and in your Honor's review of
18 the claims, I think this is revealing, and if I may offer an
19 analogy that I think is more accurate here.
20 You might think of a primary record type as a blank
21 form and an instance of a primary record type being a filled-in
22 form.  There is a difference between capturing the structure of
23 data and capturing the data itself, and the claim refers to
24 both types.  So while I agree with part of what Mr. Thompson is
25 saying about the proximity of a primary record type to a data

**Page 15**

1 object, the claim is clear that there is something different
2 between the record type itself and an instance of that record
3 type.  And as we'll get to, your Honor, that causes these
4 claims to be indefinite.
5 THE COURT: You'll argue that at some other point.
6 It's my duty now at this time to see if I can define it.
7 How about this, Mr. Thompson:  The primary record
8 types are units of information on business documents that are
9 to be collected and arranged for a user.  The management record
10 type is the manner of collection and arrangement of these units
11 of information.
12 MR. THOMPSON: I think we can work from that, your
13 Honor.
14 MR. RAY: Your Honor, I would again suggest that the
15 types, the management record types and the primary record
16 types, again are separate from the data within the XML document
17 and that's also clear from the claim as you picked up right off
18 the bat, your Honor.
19 THE COURT: I don't think so.  In an XML document are
20 purchase orders, invoices, bills of material, bills of lading,
21 other types of business documents.  The alleged invention
22 teaches a way of organizing this information so that it can be
23 used by people across various kinds of interfaces.  And if I
24 can define these terms in a meaningful way, I'd like to do it.
25 The problem with the suggested definitions is they are circular

**Page 16**

1 and at the risk of creating an erroneous definition, I'd like
2 to try to define these concepts in a way that makes it easier
3 to understand, so we'll work with what I have.
4 The next in the same patent is "organizing instances
5 of the plurality of primary record types into a hierarchy to
6 form a management record type."
7 IV says it's okay as is.  Citibank says I can't define
8 it because it's too difficult to understand.  I think we'll
9 leave it the way it is for whatever it's worth.
10 Next we go to the '666 patent.
11 MR. RAY: If I might be heard again on the term
12 "organizing."
13 THE COURT: Sure.
14 MR. RAY: The reason why this term is indefinite, and
15 I know it's a subtle difference but it's an important one, is,
16 again, because the specification in the claim makes a
17 difference between data types and instances of --
18 THE COURT: I'm going to interrupt, Mr. Ray.
19 The Markman hearing is not the moment for me to
20 declare something is indefinite or not.  You'll make a motion
21 under Section 112.  I'm telling my age.  It was an earlier
22 number it's a new number now.  You'll make a Section 112 motion
23 that the patent is void for indefiniteness and you'll make this
24 argument.  Maybe I'll agree, and maybe I won't agree.  At this
25 point, I'm trying to define.

INTELLECTUAL VENTURES I LLC, v.
CITIGROUP, INC., CITICORP,

March 26, 2015

f3qgintc                                                              Page 17

 1       MR. RAY: Understood.
 2       THE COURT: We now pass to the '666 patent.
 3   Do we have incidentally a number of students from the
 4   New York Law School?
 5       THE PROFESSOR: Yes, your Honor.
 6       THE COURT: I don't know.  Are you succeeding in
 7   following this?
 8       THE PROFESSOR: Yes, your Honor.
 9       THE COURT: How would it be if I changed places with
10   you?
11       THE PROFESSOR: I would not mind doing that.  I don't
12   think either the plaintiffs or the defendants would like my
13   bill.
14       THE COURT: They wouldn't like your robe.  You may sit
15   down.
16       THE PROFESSOR: Thank you.
17       THE COURT: Nice to have you here.  Who is your
18   teacher?
19       THE PROFESSOR: It is me, your Honor.
20       THE COURT: Is it "I."
21       THE PROFESSOR: Thank you, your Honor.
22       THE COURT: All right, the '666 patent.  You'll be
23   called upon to do a critique of this session afterwards off the
24   record.  Okay.  We're on the '666 patent.
25       The first term to be defined is "multiplication unit"

f3qgintc                                                              Page 18

 1   in claim 4.  Claim 4 claims that "A crypto-engine for
 2   cryptographic processing of data comprising an arithmetic unit
 3   operable as a coprocessor for a host processor and an interface
 4   controller for managing communications between the arithmetic
 5   unit and host processor, the arithmetic unit including: a
 6   memory unit for storing and loading data; a multiplication
 7   unit, addition unit and a sign inversion unit for performing
 8   arithmetic operations on said data, the multiplication unit,
 9   addition unit and sign version unit each having an output," and
10   so on.
11       The parties differ very slightly.  IV wants to define
12   "multiplication unit" as a unit that performs multiplication.
13   Citibank wants to define it as a unit that solely performs
14   multiplication.
15       The word "solely" is not needed to define the term and
16   I'll accept IV's construction.
17       MR. RAY: If I may.
18       THE COURT: Yes, Mr. Ray.
19       MR. RAY: May I direct you to the inventor testimony
20   on this topic, and I know this came up briefly yesterday.
21       THE COURT: Whose testimony?
22       MR. RAY: This is the inventor of the '666 patent.
23       THE COURT: Did he have an interest at the time he
24   testified?
25       MR. RAY: I'm sorry, your Honor.

f3qgintc                                                              Page 19

 1       THE COURT: Did he have an interest in the patent at
 2   the time he testified or had he assigned it?
 3       MR. RAY: He had assigned it already, your Honor.
 4       THE COURT: So what rule of evidence allows me to do
 5   this?
 6       MR. RAY: This is testimony that in contrast --
 7       THE COURT: What rule of evidence allows me to take it
 8   into consideration?  How is it competent evidence?
 9       MR. RAY: It's competent evidence because it's an
10   expression of the inventor's description.
11       THE COURT: Subjective intent of the inventor is not
12   critical to --
13       MR. RAY: It's not subjective intent, and this is what
14   I wanted to clarify about the description of this yesterday.
15   He did not have the claim language before him when he was
16   answering questions about how the multiplication unit worked.
17   Instead, he had a drawing before him from the patent and was
18   asked what does this do, how does this work, what does this do,
19   how does this work?  And he went step-by-step through figure 5
20   of the patent which shows all of the elements of the
21   multiplication unit and what came out of that is that though
22   those units all do their own subtests, the purpose of the unit
23   was solely multiplication.  And figure 5 is before you right
24   now, your Honor.
25       This is not a subjective intent, if you will, your

f3qgintc                                                              Page 20

 1   Honor.  This is merely the inventor's description as to how
 2   figure 5 worked.
 3       THE COURT: Howmedica Osteonics Corp. v. Wright
 4   Medical Tech., 540 F.3d 1337 (Fed. Cir. 2008) at page 1346 in
 5   doing a gloss of Markman, it states as follows:  "The testimony
 6   of an inventor 'cannot be relied on to change the meaning of
 7   the claims,'" citing Markman.  And in parenthesis, ("Markman
 8   requires us to give no deference to the testimony of the
 9   inventor about the meaning of the claims.")  In particular, we
10   have explained that "[t]he subjective intent of the inventor
11   when he used a particular term is of little or no probative
12   weight in determining the scope of a claim."  Markman, 52 F.3d
13   at 985.
14       MR. RAY: Yes.
15       THE COURT: It's the same rule as in contracts the
16   objective manifestation of a word if it can be understood is
17   the way that that document has to be understood.  The extrinsic
18   evidence is that which is manifested to another.  The private
19   view of the inventor after a period of time when he no longer
20   has a financial interest in the invention is of little or no
21   use, but let me listen to your argument and for whatever it's
22   worth, I'll take it into consideration.
23       MR. RAY: Thank you.  I have two points to make.  One,
24   again, this is not a subjective intent of the inventor as to
25   what he meant by the term.  This was merely a walk-through,

INTELLECTUAL VENTURES I LLC, v.
CITIGROUP, INC., CITICORP,

March 26, 2015

| f3qgintc | Page 21 |
| --- | --- |

1 step-by-step as to how the alleged invention worked.

2 THE COURT: What is the claim supposed to do?  The

3 claim is supposed to be a description of an invention that is

4 claimed to be the invention.

5 MR. RAY: It is, your Honor, but he was not asked what

6 did you mean by multiplication unit.  He was asked what the

7 multiplication unit described in the specification, how does it

8 work, step by step, element by element.  That's not subjective

9 intent, your Honor, I would say; that is instead a person of

10 skill in the art, the inventor, providing relevant testimony as

11 to how the alleged invention works.

12 THE COURT: What's your other argument?

13 MR. RAY: My second argument, your Honor, is that he

14 is a person of skill in the art.  He is qualified to look at

15 the specification and give testimony on it, and you are

16 entitled to give weight to that.

17 We have federal circuit cases that we have seen as

18 well that uphold the district court's reliance on inventor

19 testimony as part of the claim construction process.

20 THE COURT: I'll consider it along with everything

21 else.  I'm not adding the word "solely."

22 MR. RAY: If I may make one other argument in addition

23 to the inventor testimony that I think is relevant.  Yesterday,

24 when we talked about this claim reciting a device, and you had

25 asked Mr. Lim about how the device does that with this alleged

| f3qgintc | Page 22 |
| --- | --- |

1 hardware.  I would argue, your Honor, that this is exactly what

2 is contemplated by the claims in the terms multiplication unit,

3 addition unit and sign inversion unit; that if we have to have

4 a device that, in fact, is able to do RSA and ECC more

5 efficiently, then those devices, in fact, do just one thing,

6 that those math units, in fact, do one function.

7 THE COURT: Mr. Ray, it may be the case, it probably

8 is the case, and probably there's no difference between the two

9 definitions.

10 If a device does multiplication, by implication it

11 doesn't do anything else.  So you can argue it, but I'm not

12 putting in the definition.  That is the same point for addition

13 unit and the same for sign inversion unit, that is, that which

14 changes a positive number to a negative number and a negative

15 number to a positive number.

16 We're up to the term of "host processor" in claim 4.

17 The parties differ on that.  IV proposes "A central processing

18 unit that runs the computer system."  Citibank proposes "the

19 processor that drives the cryptographic coprocessor."

20 Claim 4 reads "A crypto-engine for cryptographic

21 processing of data," etc.  I read that before.  I'll read it

22 again.  "A crypto-engine for cryptographic processing of data

23 comprising an arithmetic unit operable as a coprocessor for a

24 host processor and an interface controller for managing

25 communications between the arithmetic unit and host processor."

| f3qgintc | Page 23 |
| --- | --- |

1 Am I correct that the host processor is the computer

2 containing the information that is to be encrypted with the

3 invention being in effect an accelerator of the encryption

4 process, Mr. Lim?

5 MR. LIM: Yes, your Honor, that's correct.

6 MR. RAY: I disagree.  The host processor is something

7 that communicates information and signals to the cryptographic

8 coprocessor, but it is only described as an ancillary element.

9 And the relevant --

10 THE COURT: It's ancillary because it comes before.

11 The accelerator is what makes it faster and the invention

12 teaches how that is to be done, or is supposed to teach us how

13 that is to be done, namely, how the acceleration works.  The

14 host processor is a fancy word for saying that which comes

15 before, the computer containing information that comes before.

16 Show me the specifications, Mr. Lim, or whoever is

17 arguing this point.

18 MR. LIM: Sure.  We can go to figure 1, your Honor.  I

19 think that picture would easily address this point.  On the

20 very left-hand side of figure 1, it refers to a host processor

21 that is communicating with the coprocessor.  So if you see the

22 very left-hand side of this figure, it says "to host

23 processor," so that's what the claim is referring to.  That's

24 the communication that happens between the host processor and

25 the coprocessor.

| f3qgintc | Page 24 |
| --- | --- |

1 THE COURT: What is the host processor?  I don't think

2 I'm right.  I don't think it's simply the computer before.  As

3 a host processor, it must have begun the process of

4 cryptographic encryption.

5 MR. LIM: The host processor is the main processor

6 that runs the main computer, and that's the Court's definition

7 from the JPMC case that we discussed last time.  So, its job is

8 to run the entire computer.  When it has to do intensive

9 encryption operations, it basically delegates that

10 responsibility to the crypto-engine, the coprocessor.

11 THE COURT: I don't remember the process by which we

12 came to that definition with Chase, but let's do it again.

13 MR. LIM: If we can look at the claim language that

14 your Honor just read.

15 THE COURT: Look at the specifications.

16 MR. LIM: Okay.

17 THE COURT: Where is the term used?

18 MR. LIM: I can show you that.

19 THE COURT: While we do that, Mr. Lim, for the benefit

20 of the students, the patent document has a number of

21 components.  First, there are drawings, basically drawings, and

22 then there are specifications describing the context of the

23 patent, the prior art and giving the reader an understanding of

24 what is going on by the patent with the invention and the like.

25 Then there are the claims, and the claims define what it is

INTELLECTUAL VENTURES I LLC, v.
CITIGROUP, INC., CITICORP,

March 26, 2015

f3qgintc                                                        Page 25

1  that is an invention.
2        There's a tension doing claims between accuracy
3  between accuracy and generality.  The inventor wants his claim
4  to cover as much area as possible to get maximum protection
5  from the patent monopoly; however, since patents are an
6  exception to the general policy favoring competition, the
7  claims have to be limited to just what is convention.
8        The concept of a patent monopoly is an exchange.  It's
9  an exchange that offers the inventor an incentive to publicly
10  disclose his invention for the benefit of all others and, in
11  exchange, a limited monopoly is given for a term of years.
12        The writer of the patent wants to be as embracive as
13  possible; the patent office and the judge would like to try to
14  limit it fairly; and the alleged infringer would like to narrow
15  it to the greatest extent possible so that the practice that
16  the alleged infringer is using falls outside of the patent.
17  That's the tension, the dynamic that goes into it.
18        It's my job as a judge to try to give a definition to
19  the patent in ways that make it understandable.  We have a lot
20  of compound words.  Patent-writing is not considered the
21  equivalent of a literature lesson.  To say the least, they're
22  very difficult to read.  That may be the game, I don't know,
23  but I'm supposed in a Markman hearing, which is supposed to
24  come at the beginning of the case, to give a fair definition to
25  the terms, and that definition will then hold for the rest of

f3qgintc                                                        Page 26

1  the case and will guide the parties in their discovery, in
2  their various kinds of motions.
3        There was an example, for example, Mr. Ray used the
4  term of "indefiniteness."  You know under Section 112 of the
5  patent laws, the invention has to be described and there are
6  terms of description.  Part of the battle here is to define it
7  in a way that exposes the indefiniteness; that's goal of the
8  defendant.  So there are constant tensions that have to be
9  understood.  As a judge, I want to free my mind of all of
10  these.  I want to just do the definitional part and whatever
11  happens after that will happen.
12        In bringing us to this point, I have a procedure which
13  starts with a tutorial where I learn the patent, that occurred
14  yesterday, and the parties have prepared a schedule of four
15  columns.  The first column is the term and the phrase, that's
16  the terms and phrases that are used in the claim itself; and
17  the second and third column are the parties' alternative views
18  of what should be appropriate - I see you have it in front of
19  you - and the last column is for me to define it in an order
20  that will issue.
21        Mr. Lim, have you had a chance to find what you need
22  to?
23        MR. LIM: Yes, your Honor.  May I refer the Court's
24  attention to column 2 starting with line 64, that's the
25  beginning of the paragraph, and we will go to the top of column

f3qgintc                                                        Page 27

1  3, line 2, and if I may read this part of that specification.
2        THE COURT: Yes.
3        MR. LIM: It starts with "referring to figure 1,"
4  that's the figure I just showed the Court earlier, "the
5  preferred embodiment of a compact crypto-engine 10 comprises a
6  modular arithmetic unit (MAU) 11."
7        THE COURT: Leave out the numbers.
8        MR. LIM: "...and an interface control unit.  The
9  inputs and outputs of the ICU," which is interface control
10  unit, "are provided from/to a host processor" continuing on to
11  the top of column three "(not shown)" and then it gives
12  examples, "such as a personal, network computer or digital
13  signal processor."
14        So there, the specification provided several examples
15  of what a host processor can be, and the Court's previous
16  construction is consistent with these examples.
17        MR. RAY: Your Honor --
18        THE COURT: One minute.  I shouldn't say "that runs
19  the computer system."
20        I could say a personal, network computer or digital
21  signal processor containing information that is to be
22  encrypted, and which delivers its signal to the coprocessor
23  that is the subject of the invention.
24        MR. LIM: That would be fine, your Honor.
25        THE COURT: Mr. Ray.

f3qgintc                                                        Page 28

1        MR. RAY: Your Honor, the issue I have with that
2  construction, and with all due respect to the construction that
3  was set forth in JPMorgan, is that it does not define the term
4  as helpful to the finder of fact as to the host processor in
5  the context of the claim.  A host processor is defined by its
6  relationship to the coprocessor, and that is the subject of the
7  claim, the crypto-engine itself.
8        The definition that we have proposed, the processor
9  that drives or run, either is fine, the cryptographic
10  coprocessor --
11        THE COURT: It really doesn't run.  The host processor
12  does not run the cryptographic processor.  It feeds
13  information.
14        MR. RAY: Yes, signals and information that allows the
15  coprocessor to run.
16        THE COURT: That wouldn't do it.  A processor that
17  delivers signals or information which the cryptographic
18  coprocessor then accelerates.  That could be a suitable
19  definition also.
20        MR. RAY: Would you repeat it, your Honor.
21        (Record read)
22        THE COURT: Can you deal with that, Mr. Lim?
23        MR. LIM: That would be fine.
24        MR. RAY: Your Honor, my only issue with that is that
25  it does not place the host processor in the proximity to the

INTELLECTUAL VENTURES I LLC, v.
CITIGROUP, INC., CITICORP,

March 26, 2015

1 coprocessor that I think that the host processor is talking
2 about.
3        THE COURT: How about putting the word "directly,"
4 whether it's information or signals directly?
5        MR. RAY: That would be fine, your Honor.
6        MR. LIM: If I may, that's actually too restrictive.
7 If you look at the claim, there's no requirement that the
8 coprocessor --
9        THE COURT: I agree with you, Mr. Lim.
10       MR. LIM: Thank you.
11       THE COURT: We'll leave that word out.  I think it is
12 suggested by the definition and there's nothing in the claims
13 that deal with how close they have to be together.  All right.
14 We have that.
15       Next is "op-code signal," claim 4.
16       MR. LIM: This term is agreed, your Honor.
17       THE COURT: That's agreed?
18       MR. LIM: Yes.
19       THE COURT: The next term is "high frequency
20 manipulated data."  The difference is the word "rate."  My
21 definition previously was data operated on at a high rate, and
22 Citibank would like to substitute "higher clock speed."
23       I think "rate" is good enough and probably more
24 accurate because clock speed suggests seconds, minutes and
25 hours, and the rate of speed can be in different units.

1        MR. RAY: As an initial matter, I don't believe you
2 construed this term before.  This was not in the JPMorgan case,
3 so this is a term of first impression for your Honor.  So, I
4 was mentioning that this is not a term that you've construed
5 before.  This is a term of first impression for your Honor.
6        The reason why clock speed is correct over rate is
7 that the clock speed is how processors keep data in sync.  And,
8 remember, this is a device claim.  So, we have a processor on
9 one hand, a cryptographic coprocessor, a host processor on the
10 other hand and our other hand.
11       The clock speed of the processor is something that we
12 know as those processors sit in our hands; it's a known way to
13 measure the frequency, high or low, between the data in those
14 elements.  We don't need to actually run them to know that.
15 And it's important to bear that in mind because claim 4 is a
16 device claim, not a method claim.
17       THE COURT: We can say rate of speed; that's probably
18 better.  We'll use rate, we'll use rate of speed rather than
19 clock speed, higher rate of speed.
20       MR. RAY: If I may again mention, you had mentioned
21 clock connotating hours, minutes.  That is, I would say, not
22 necessarily accurate.
23       THE COURT: I'm not going to go with clock.  I don't
24 think it adds anything that's meaningful.  Rate of speed is
25 what it is, and that will control the lower frequency

1 manipulated data, as well.
2        We're now moving on to '002, and the first claim is
3 mobile interface.  IV suggests "a user interface accessible on
4 different computing devices and capable of dynamically
5 accessing user specific data stored on a network server and
6 local device."
7        Citibank thinks the term is indefinite, but just in
8 case suggests the term should be given its plain meaning, "an
9 interface operable to move from one local device to another."
10       As its stated in the patent, I'll read it, first
11 claim:  "A method for retrieving user specific resources and
12 information stored either on a local device or a network
13 server, the method comprising the steps of:  Retrieving a
14 mobile interface from the network server to the local device;
15 displaying the mobile interface on the local device, the mobile
16 interface including a plurality of pointers corresponding to
17 the user specific resources and information; and retrieving the
18 user specific resources and information using the plurality of
19 pointers displayed on the mobile interface."
20       I'm going to work with the Citibank-suggested
21 instruction being:  An interface allowing the user to select
22 files from various computing devices.
23       Can you live with that, Mr. Lim?
24       MR. BOHL: Nicholas Bohl for plaintiff.  I'll be
25 handling this one.

1        THE COURT: All right, Mr. Bohl.
2        MR. BOHL: It might be too restrictive in the sense of
3 files inasmuch --
4        THE COURT: What would you like instead of "files"?
5        MR. BOHL: "User specific data" is what we had or we
6 could say perhaps "user information" with the understanding
7 that it encompasses what is discussed in the patent.
8        THE COURT: Why can't it be called a file?  In
9 computer law, we use files.
10       MR. BOHL: The patent office also talks not just about
11 retrieving files but also bookmarks or user information such
12 as --
13       THE COURT: Files and other information?
14       MR. BOHL: That's fine, your Honor.
15       THE COURT: An interface allowing a user to select
16 files and other information from various computing devices.
17       We haven't captured the word "mobile."
18       MR. BOHL: I think by your Honor saying "from various
19 computing devices" that that captures the word "mobile" in the
20 sense that the patent means to use it.  The idea here is that I
21 can ask --
22       THE COURT: No, not at all.  The interface can be
23 stable at a point in different places.
24       MR. BOHL: That's how I would say that the patent uses
25 mobile interface.  There's nothing in the patent directed to

INTELLECTUAL VENTURES I LLC, v.
CITIGROUP, INC., CITICORP,

March 26, 2015

f3qgintc                                                    Page 33

1  this idea that an instance of the interface itself has to move
2  from one location to another.
3         If your Honor looks even at the face of the patent,
4  which it shows figure 15, it shows two instances of the same
5  mobile interface client is running on different --
6         THE COURT: Just a moment.  I have it.
7         MR. BOHL: What this shows at 102a and 102b are two
8  instances of the mobile interface client at different locations
9  accessing the same information.  So the agent itself, the
10 mobile interface itself is not mobile, but the user is able to
11 use the mobile interface to access the files and information
12 from one of a number of different locations.
13        MR. LANTIER: May I address that.
14        THE COURT: One minute.
15        MR. LANTIER: Two points.
16        THE COURT: One minute.
17        MR. LANTIER: I apologize.
18        THE COURT: Let me modify what I did:  An interface
19 reflecting changing information through various connecting
20 devices allowing a user to select files and other information
21 from such devices.
22        MR. BOHL: Your Honor, I believe that would be fine.
23        THE COURT: Who wanted to speak?
24        MR. LANTIER: This is Mr. Lantier.
25        THE COURT: Mr. Lantier.

f3qgintc                                                    Page 34

1         MR. LANTIER: Your Honor, I think that that definition
2  would still read the word "mobile" out of the claim term, and
3  I'd like to make a couple of points in response to the
4  arguments that were made.
5         The first is with reference to the figure that is
6  before your Honor and the suggestion that the mobile interface
7  appear simultaneously on multiple machines but does not move,
8  as your Honor can see, 102a and 102b that are pointed to here
9  refer to the MIA, that is the mobile interface agent, not a
10 mobile interface.  And as we discussed yesterday --
11        THE COURT: Where does the word "agent" appear?
12        MR. LANTIER: MIA above the word "client" refers to
13 mobile interface agent.
14        THE COURT: Where is that?
15        MR. LANTIER: It's in the figure that's on the screen.
16 It's a figure on the face of the patent, as well.
17        THE COURT: I see, but it's not the claim.
18        MR. LANTIER: That term is not in the claim.  It does
19 appear in claim 7, but not in claim 1.
20        THE COURT: I think what this means is that the client
21 is affecting the Windows PC and the client is affecting another
22 client or the same one is affecting the cellular telephone, and
23 then these, in turn, are reflected on the mobile interface.
24        I don't think there's an agent involved here.  I'm
25 declined to use that.

f3qgintc                                                    Page 35

1         MR. LANTIER: And we agree with that; we agree that
2  the agent is not in the claim, and it's not in the claim term
3  mobile interface.  The patent written description describes a
4  mobile interface agent.  The patent written description never
5  uses the term "mobile interface."
6         THE COURT: I'm not inputting an agent in the
7  definition.
8         MR. LANTIER: I'm not asking you to, your Honor; in
9  fact, that's what Intellectual Ventures is asking you to do.
10 They're asking you to find that "mobile interface" and "mobile
11 interface agents" are synonyms and they cannot be synonyms.
12        THE COURT: But I'm not faced with that issue here.
13 My definition doesn't say anything about agent.  It doesn't
14 have to.
15        MR. LANTIER: The functionality you are attributing to
16 the interface is agent functionality, not functionality with
17 interface to perform --
18        THE COURT: No.  An agent does something.  Nothing
19 works in isolation.  There's an agent at the source of these
20 things.  I decline to do that.  The definition will be as I've
21 read it.
22        MR. LANTIER: If I can make one more point on the term
23 "mobile."  The statement was made that there was nothing in the
24 specification in-patent to support the idea that the interface
25 itself would move from one device to another.

f3qgintc                                                    Page 36

1         THE COURT: It does move from one device.  It shows it
2  changes.  Affecting changing information from various connected
3  devices as I put it.  An interface reflecting changing
4  information from various connected devices allowing a user to
5  select files and other information from such devices.
6         MR. LANTIER: To be clear, then, your Honor, your
7  construction means that the interface moves from one computer
8  to another computer.  Is that correct?
9         THE COURT: No.
10        MR. LANTIER: So, that's the point I wanted to
11 address.
12        THE COURT: I don't think it does.  If it does, it
13 does, but I don't think it does.
14        MR. LANTIER: Then, your Honor, respectfully, I don't
15 think that the definition reflects the word "mobile."
16        THE COURT: I think it does.  That's the way it's
17 going to be.
18        Next is "retrieving" or "retrieved."  IV wants
19 "accessing" or "accessed for use by the local device."
20 Citibank wants "requesting" or "requested and
21 obtaining/obtained for use by the local device."
22        I think "retrieving" is better than the others.  It
23 needs no definition.  I decline to give it a definition.
24        The next is "user specific resources and information."
25        MR. BOHL: And that's an agreed upon term, your Honor.

INTELLECTUAL VENTURES I LLC, v.
CITIGROUP, INC., CITICORP,

March 26, 2015

| f3qgintc | Page 37 |
|---|---|

1    THE COURT: Good, and so is "pointer."

2    MR. BOHL: Yes.

3    THE COURT: So, we're finished with '002, and we next
4  go to '574. The first term I'm asked to define, these are
5  agreed terms, so I don't need to deal with that.

6    Then we have the next one, "public key certificate."
7  IV suggests "a certificate that vouches for the trustworthiness
8  of a public key including by indicating that the public key was
9  issued by the issuer who was supposed to have issued it."

10    Citibank wants "specially constructed data structure
11  which is signed by a certification authority and contains a
12  user's public key, the user's identity, and some additional
13  parameters related to the validity of the certificate."

14    The claim reads as follows, and this is lines 18 of 31
15  of the claim:  "In the certification system for secure
16  communications containing computer processes arranged in a
17  certification infrastructure, a method of requesting and
18  issuing a public key certificate, comprising, (a) at a
19  requesting computer process, generating a data structure
20  containing the data items required for a public key
21  certificate, including a public key, self-signing the data
22  structure and sending the signed data structure as a
23  certificate signature request to a computer process authorized
24  as an issuing certification authority, and (b) at said computer
25  process authorized as an issuing certification authority,

| f3qgintc | Page 38 |
|---|---|

1  verifying the authenticity of said request, and if authentic,
2  certifying and returning the data structure in a certificate
3  signature reply."

4    It goes on to deal with a new entity that wants to use
5  it, to the patent claims, invention -- to verify the signed
6  data structure sent from a sender to a receiver including
7  "verifying the authenticity of signatures iteratively,
8  beginning with a common point of trust."

9    Who is going to speak for IV?

10    MR. THOMPSON: Me, your Honor.

11    THE COURT: Mr. Thompson. Why can't I just put a
12  period before the word "including"?

13    MR. THOMPSON: Just to make sure that I'm centered --

14    THE COURT: A certificate that vouches for the
15  trustworthiness of a public key proffered by the sender or the
16  receiver of information.

17    MR. THOMPSON: That would be fine with IV. The reason
18  that that language is written the way that it is is because
19  that is the construction that was given this term in the JPMC
20  case. For the purposes of consistency before the Court, we
21  proposed keeping that construction.

22    THE COURT: That's a good argument.

23    So, what does Citibank find faulty in the definition
24  we have? Who is speaking to this?

25    MR. LANTIER: I will, Mr. Lantier. There are three

| f3qgintc | Page 39 |
|---|---|

1  issues with the definition. I believe Intellectual Ventures
2  agrees on one of the issues, so I'll address that first; that
3  is that the original definition uses the word "certificate,"
4  which is the claim term itself. The patent is very clear at
5  column 10, line 36 to 37 about what a certificate is. It is a
6  specially constructed data structure which contains the user's
7  public key and further contains unique identification of the
8  public key owner and some additional parameters related to the
9  validity of the certificate.

10    This is not a description of embodiment as stated --

11    THE COURT: So your definition picks those terms up.

12    MR. LANTIER: That's correct, your Honor. I believe
13  that Intellectual Ventures agrees that the term "data
14  structure" --

15    THE COURT: Give me a minute.

16    MR. LANTIER: Yes.

17    THE COURT: Mr. Thompson, what's wrong with Citibank's
18  suggestion?

19    MR. THOMPSON: I think it's not as good as the
20  construction that the Court provided initially in that there
21  are at least two things that are clearly objectionable,
22  including the addition of the language "specially constructed."

23    THE COURT: That comes right out of the
24  specifications.

25    MR. THOMPSON: Well, it actually is a little different

| f3qgintc | Page 40 |
|---|---|

1  in the specification.  "A certificate is specially constructed
2  data structure which contains the user's public key," which
3  means that it contains the user's public key. That's what's
4  special about it.

5    While the specification is teaching what the invention
6  is about, every word of it doesn't necessarily inform the claim
7  and help a fact finder to figure out what is and without the
8  boundaries, so I think "specially constructed" doesn't add
9  anything. I think that the sentence that's being pointed to is
10  talking about --

11    THE COURT: Here's what we'll do. We're going to take
12  both. The first sentence will be the following:  A certificate
13  that vouches for the trustworthiness of a public key, period.
14  A certificate is specially constructed data structure, etc., as
15  in Citibank's suggestion. We'll combine both.

16    MR. THOMPSON: May I ask for one modification to that.

17    THE COURT: Yes.

18    MR. THOMPSON: Which is this "and some additional
19  parameters related to the validity of the certificate."

20    THE COURT: Yes.

21    MR. THOMPSON: That seems a little loose in the
22  context of claim language.

23    MR. LANTIER: Your Honor, it's their definition from
24  the patent.

25    THE COURT: Please don't argue unnecessarily. It's

INTELLECTUAL VENTURES I LLC, v.
CITIGROUP, INC., CITICORP,

March 26, 2015

| f3qgintc | Page 41 |
| --- | --- |

1 right in the specifications. I'm willing to spell out what
2 "parameters" means, but I don't think there is anything --
3     MR. THOMPSON: Your Honor, if you're committed to that
4 language, then we'll work with it.
5     THE COURT: Good. So we have that. The next two are
6 agreed. The next issue is "policy certification authority."
7     MR. THOMPSON: If I can address that, your Honor.
8     THE COURT: Let me read it first. You're going too
9 fast.
10     MR. THOMPSON: I may be able to say something that
11 would be helpful, though.
12     THE COURT: The only difference between the two is the
13 addition of the word "certification" before "authority."
14     MR. THOMPSON: May I just help in one way.
15     If you see a footnote in the claim language, here
16 there's a footnote that tells you something, which is that IV
17 has endorsed the Court's prior construction from the JPMC case.
18 Citi has come up with a slight modification of what the Court
19 adopted in Chase and IV is not objecting to it.
20     THE COURT: You don't disagree.
21     MR. THOMPSON: Okay.
22     THE COURT: So we'll use the Citibank point. Thank
23 you for pointing out footnotes.
24     "Revocation list."
25     MR. THOMPSON: It's the same issue.

| f3qgintc | Page 42 |
| --- | --- |

1     THE COURT: I'll go with what I did before.
2     Next is "Certifying and returning the data structure."
3 I think the Citibank construction is a better one.
4     MR. THOMPSON: If I could just add one caveat, your
5 Honor, which is, the construction we offered was the
6 construction the Court adopted in the Chase case.
7     THE COURT: The Citibank construction is a little more
8 meaningful. We'll take that.
9     "Common point of trust," I'll do what I did before.
10     MR. LANTIER: Your Honor, if I could briefly
11 interject. This is another one of the terms where there's not
12 disagreement between the parties; it's only an issue of whether
13 the slight clarification that it's the lowest point in the
14 hierarchy.
15     THE COURT: I think what I did before is sufficient,
16 and similarly with "point of trust in common with."
17 Application is agreed. And "validated," I don't have to do
18 anything. Just leave it the way it is. The next two are
19 agreed. And the next issue is "Data items required for a
20 public key certificate." I'll take what I did before, and
21 we're finished.
22     I think what I'll do next is issue the order in its
23 tentative version and allow either side to ask for -- you tell
24 me what you want to do. I think the easiest thing is to issue
25 it. And if either side wants to propose a change different

| f3qgintc | Page 43 |
| --- | --- |

1 from what's argued now, don't rehash your arguments, but if
2 there's something new and different that you want me to take
3 into consideration, put it in writing; otherwise, it will be
4 final.
5     MR. THOMPSON: If I may propose a way to do that. If
6 the Court would just issue an order with the understanding that
7 if a party has an issue with what's in the claim construction
8 order, they can move for reconsideration of a construction.
9     THE COURT: I don't want to do that because that puts
10 more of a burden on the party than I think it should have in
11 this kind of a proceeding.
12     MR. THOMPSON: Fair enough.
13     THE COURT: I'll do it this way. It amounts to the
14 same thing, but it eliminates the special burden on rehearing.
15 I want to tell you now, I don't want to rehash what you've
16 argued. What you've argued I've taken into consideration.
17     MR. LANTIER: Yes. One point of clarification. If
18 needed, following those submissions, your Honor may reschedule
19 a hearing.
20     THE COURT: I might. I might.
21     MR. LANTIER: So we can discuss --
22     THE COURT: It depends what you say.
23     MR. LANTIER: Would it be helpful to set some kind of
24 time frame for the submission of the responses?
25     THE COURT: I'll set it in the order.

| f3qgintc | Page 44 |
| --- | --- |

1     MR. LANTIER: Thank you.
2     THE COURT: It will be short, though.
3     Where is this case in terms of discovery? Let's say I
4 issue the order, what comes next? Do we have a case management
5 plan in the case?
6     MR. LIM: We have not, your Honor. I think we agreed
7 to stay discovery until after the Markman hearing.
8     THE COURT: I will then issue my order, set a date for
9 a conference. I usually do it off the record, but we'll do it
10 on the record in case anybody wants to argue anything. Then
11 we'll move right into a case management plan and set the stage
12 for what goes next.
13     MR. LIM: That would be great, your Honor.
14     THE COURT: I'll probably call for an agenda of what
15 you want to do. If there are going to be motions, I'd like to
16 know them and what they'll be, and then we can set a briefing
17 schedule, and then decide whether we want to have discovery
18 until the motion is decided or hold them off again. Thanks
19 very much.
20     MR. ADAMO: Just as a point of information, the patent
21 office deadline for deciding the '666 IPR is April 16. My
22 expectation is they're not going to ask for more time. We will
23 have a ruling from the patent office one way or another.
24     THE COURT: On whether it's valid or not?
25     MR. ADAMO: Whether it survives or not; yes. Of

INTELLECTUAL VENTURES I LLC, v.
CITIGROUP, INC., CITICORP,

March 26, 2015

f3qgintc                                                      Page 45

```
 1  course, as soon as we get it, they'll get it at the same time,
 2  and we'll get a copy to the Court, come what may.
 3         THE COURT: I don't think that should change what I'm
 4  doing here.
 5         MR. ADAMO: I just wanted to let you know just in case
 6  it did in view of your other cases.
 7         THE COURT: Thanks.  I don't think I need all these
 8  books.  Can I give them back to you?
 9         MR. ADAMO: After what you said, I thought you were
10  using this to fill in the gaps in the chambers library.
11         THE COURT: Since our budgets are cut, of course.
12         (Adjourned)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**[**

**[t]he (1)**
20:10

**A**

**able (3)**
22:4;33:10;41:10
**above (1)**
34:12
**Absolutely (1)**
7:7
**accelerated (1)**
4:13
**accelerates (1)**
28:18
**acceleration (1)**
23:13
**accelerator (2)**
23:3,11
**accept (1)**
18:16
**access (1)**
33:11
**accessed (1)**
36:19
**accessible (1)**
31:3
**accessing (3)**
31:5;33:9;36:19
**accuracy (2)**
25:2,3
**accurate (3)**
14:19;29:24;30:22
**across (5)**
2:16;3:13;5:8;6:11;
15:23
**actually (4)**
7:10;29:6;30:14;
39:25
**ADAMO (4)**
44:20,25;45:5,9
**add (2)**
40:8;42:4
**adding (1)**
21:21
**addition (7)**
18:7,9;21:22;22:3,
12;39:22;41:13
**additional (3)**
37:12;39:8;40:18
**address (6)**
2:19;23:19;33:13;
36:11;39:2;41:7
**adds (1)**
30:24
**Adjourned (1)**
45:12
**adopted (2)**
41:19;42:6
**affecting (5)**

4:7;34:21,21,22;36:2
**afterwards (1)**
17:23
**again (11)**
6:13;9:1;15:14,16;
16:11,16;20:24;22:22;
24:12;30:20;44:18
**against (1)**
4:18
**age (1)**
16:21
**agenda (1)**
44:14
**agent (12)**
33:9;34:9,11,13,24;
35:2,4,6,13,16,18,19
**agents (1)**
35:11
**agree (7)**
8:13;14:24;16:24,24;
29:9;35:1,1
**agreed (8)**
29:16,17;36:25;37:5;
41:6;42:17,19;44:6
**agreement (1)**
10:8
**agrees (2)**
39:2,13
**ahead (1)**
11:4
**algorithm (16)**
2:12,13,15;4:2,23;
5:7,8;6:5,5,19,19,22;
7:22,23;9:10,18
**algorithms (2)**
7:4,4
**alleged (6)**
15:21;21:1,11,25;
25:14,16
**allow (1)**
42:23
**allowing (4)**
31:21;32:15;33:20;
36:4
**allows (3)**
19:4,7;28:14
**along (1)**
21:20
**alternative (1)**
26:17
**Ambien (1)**
5:4
**ambiguity (1)**
9:9
**amounts (1)**
43:13
**analogize (1)**
11:10
**analogy (3)**
10:23;11:18;14:19
**analyzed (1)**
14:2
**ancillary (2)**

23:8,10
**apologize (1)**
33:17
**appear (4)**
11:16;34:7,11,19
**appended (1)**
10:15
**Application (1)**
42:17
**appropriate (1)**
26:18
**approximately (2)**
5:9;9:12
**April (1)**
44:21
**apt (1)**
10:22
**area (1)**
25:4
**argue (6)**
9:22;15:5;22:1,11;
40:25;44:10
**argued (3)**
43:1,16,16
**arguing (2)**
11:12;23:17
**argument (7)**
11:7;16:24;20:21;
21:12,13,22;38:22
**arguments (3)**
11:13;34:4;43:1
**arithmetic (7)**
18:2,4,5,8;22:23,25;
27:6
**arranged (3)**
14:7;15:9;37:16
**arrangement (5)**
11:23;13:1,3;14:10;
15:10
**art (5)**
6:21,22;21:10,14;
24:23
**aspects (1)**
9:11
**assigned (3)**
9:4;19:2,3
**attached (1)**
8:4
**attention (1)**
26:24
**attributing (1)**
35:15
**authentic (1)**
38:1
**authenticity (2)**
38:1,7
**authority (5)**
37:11,24,25;41:6,13
**authorized (2)**
37:23,25
**avoid (1)**
9:7
**away (1)**

7:5

**B**

**back (2)**
8:16;45:8
**based (1)**
6:3
**basically (2)**
24:9,21
**bat (1)**
15:18
**battle (1)**
26:6
**bear (1)**
30:15
**becomes (1)**
9:4
**beginning (4)**
10:10;25:24;26:25;
38:8
**begun (1)**
24:3
**behalf (1)**
2:20
**benefit (2)**
24:19;25:10
**better (4)**
5:4;30:18;36:22;
42:3
**bill (1)**
17:13
**bills (4)**
14:6,9;15:20,20
**blank (1)**
14:20
**block (1)**
8:16
**BOHL (13)**
31:24,24;32:1,2,5,10,
14,18,24;33:7,22;
36:25;37:2
**bookmarks (1)**
32:11
**books (1)**
45:8
**Both (6)**
3:2,3,6;14:24;40:12,
15
**boundaries (1)**
40:8
**bricks (5)**
12:18,18,20,23;13:1
**brief (4)**
7:11;8:4;11:12,12
**briefing (1)**
44:16
**briefly (2)**
18:20;42:10
**bringing (1)**
26:12
**budgets (1)**
45:11

**building (1)**
12:17
**burden (2)**
43:10,14
**business (5)**
12:12,13;14:5;15:8,
21
**bytes (2)**
8:25,25

**C**

**call (1)**
44:14
**called (2)**
17:23;32:8
**came (5)**
12:21,21;18:20;
19:21;24:12
**can (31)**
2:7;3:16,19;4:6,8,9;
7:5;9:15;15:6,12,22,
24;20:16;22:11;23:18;
24:13,18;27:15;28:22;
29:25;30:17;31:23;
32:21,22;34:8;35:22;
41:7;43:8,21;44:16;
45:8
**capable (1)**
31:4
**captured (1)**
32:17
**captures (1)**
32:19
**capturing (2)**
14:22,23
**case (16)**
22:7,8;24:7;25:24;
26:1;30:2;31:8;38:20;
41:17;42:6;44:3,4,5,10,
11;45:5
**cases (2)**
21:17;45:6
**causes (2)**
9:10;15:3
**caveat (1)**
42:4
**cellular (1)**
34:22
**centered (1)**
38:13
**central (1)**
22:17
**certain (1)**
9:2
**certificate (16)**
37:6,7,13,18,21,23;
38:2,14;39:3,5,9;40:1,
12,14,19;42:20
**certification (7)**
37:11,15,17,24,25;
41:6,13
**certifying (2)**

38:2;42:2
**chambers (1)**
    45:10
**chance (1)**
    26:21
**change (3)**
    20:6;42:25;45:3
**changed (1)**
    17:9
**changes (2)**
    22:14;36:2
**changing (3)**
    33:19;36:2,3
**characters (1)**
    8:24
**chart (1)**
    2:3
**Chase (3)**
    24:12;41:19;42:6
**Cir (1)**
    20:4
**circuit (1)**
    21:17
**circular (1)**
    15:25
**Citi (1)**
    41:18
**Citibank (14)**
    2:15;3:9;8:13;16:7;
    18:13;22:18;29:22;
    31:7;36:20;37:10;
    38:23;41:22;42:3,7
**Citibank's (4)**
    5:7,23;39:17;40:15
**Citibank-suggested (1)**
    31:20
**citing (1)**
    20:7
**claim (49)**
    2:23;3:15,17,19;
    12:5,6,11;14:23;15:1,
    17;16:16;18:1,1;19:15;
    20:12;21:2,3,19,24;
    22:16,20;23:23;24:13;
    25:3;26:16;28:5,7;
    29:7,15;30:8,15,16,16;
    31:2,11;34:2,17,18,19,
    19;35:2,2;37:14,15;
    39:4;40:6,22;41:15;
    43:7
**claimed (2)**
    4:16;21:4
**claims (16)**
    2:11;6:1,15;7:13;
    9:24;14:18;15:4;18:1;
    20:9;22:2,2;24:25,25;
    25:2,7;29:12;38:5
**claims' (1)**
    20:7
**clarification (2)**
    42:13;43:17
**clarify (1)**
    19:14

**clear (9)**
    3:12;6:3,18;7:3,21;
    15:1,17;36:6;39:4
**clearly (2)**
    8:18;39:21
**client (6)**
    33:5,8;34:12,20,21,
    22
**clock (8)**
    29:22,24;30:6,7,11,
    19,21,23
**close (2)**
    10:21;29:13
**coherent (1)**
    4:15
**colleagues (1)**
    8:16
**collected (2)**
    14:7;15:9
**collection (2)**
    14:10;15:10
**Column (13)**
    7:9,16;8:20;11:25;
    13:9,11;26:15,17,19,
    24,25;27:11;39:5
**columns (1)**
    26:15
**combine (1)**
    40:15
**combined (1)**
    2:3
**committed (1)**
    41:3
**common (3)**
    38:8;42:9,16
**commonality (1)**
    3:2
**communicates (1)**
    23:7
**communicating (1)**
    23:21
**communication (1)**
    23:24
**communications (3)**
    18:4;22:25;37:16
**compact (1)**
    27:5
**competent (2)**
    19:8,9
**competition (1)**
    25:6
**completely (1)**
    6:16
**component (2)**
    3:6;13:20
**components (5)**
    12:21;13:15,23;14:2;
    24:21
**compound (1)**
    25:20
**compress (1)**
    4:21
**compressed (5)**

4:24,25;5:3;8:22;9:4
**compresses (3)**
    2:14,15;5:8
**compression (16)**
    2:12,13;3:4,20,21,
    22;4:2,20,23;5:1,2,7;
    6:5,19;7:22,23
**comprises (2)**
    12:13;27:5
**comprising (5)**
    3:20;18:2;22:23;
    31:13;37:18
**computer (16)**
    22:18;23:1,15;24:2,
    6,8;27:12,19,20;32:9;
    36:7,8;37:16,19,23,24
**computing (4)**
    31:4;42;32:16,19
**concept (2)**
    11:22;25:8
**concepts (1)**
    16:2
**concrete (1)**
    13:3
**conducive (1)**
    14:8
**conference (1)**
    44:9
**confidence (1)**
    5:18
**configured (1)**
    5:1
**confuses (1)**
    3:23
**connected (2)**
    36:2,4
**connecting (1)**
    33:19
**connotating (1)**
    30:21
**connoted (1)**
    10:10
**connotes (2)**
    11:3,4
**consider (1)**
    21:20
**consideration (4)**
    19:8;20:22;43:3,16
**considered (1)**
    25:20
**consistency (1)**
    38:20
**consistent (1)**
    27:16
**constant (1)**
    26:8
**constructed (6)**
    37:10;39:6,22;40:1,
    8,14
**construction (24)**
    2:24;5:8,23;6:2,7;
    8:9,10,12;18:16;21:19;
    27:16;28:2,2;36:7;

38:19,21;39:20;41:17;
42:3,5,6,7;43:7,8
**constructions (4)**
    2:3;3:2,3,7
**construed (2)**
    30:2,4
**contain (1)**
    10:2
**containing (5)**
    23:2,15;27:21;37:16,
    20
**contains (5)**
    37:11;39:6,7;40:2,3
**contemplated (1)**
    22:2
**context (3)**
    24:22;28:5;40:22
**Continuing (2)**
    4:19;27:10
**contracts (1)**
    20:15
**contrast (2)**
    8:10;19:6
**contrasting (1)**
    7:3
**control (3)**
    27:8,9;30:25
**controller (2)**
    18:4;22:24
**convention (1)**
    25:7
**conventions (1)**
    5:17
**copied (2)**
    13:21,23
**coprocessor (15)**
    18:3;22:19,23;23:8,
    21,25;24:10;27:22;
    28:6,10,15,18;29:1,8;
    30:9
**copy (2)**
    8:5;45:2
**Corp (1)**
    20:3
**Correspond (2)**
    13:16,18
**corresponding (1)**
    31:16
**couple (1)**
    34:3
**course (2)**
    45:1,11
**court (138)**
    2:1,2,8,11,21;3:8,18;
    4:5;5:12;6:10,25;7:5,9,
    12,17,24;8:6,15;9:5;
    10:20;11:1,3,11,18;
    13:6,12,14,18,23;14:4,
    14;15:5,19;16:13,18;
    17:2,6,9,14,17,20,22;
    18:18,21,23;19:1,4,7,
    11;20:3,15;21:2,12,20;
    22:7;23:10;24:1,11,15,

17,19;27:2,4,7,18,25;
28:11,16,22;29:3,9,11,
17,19;30:17,23;32:1,4,
8,13,15,22;33:6,14,16,
18,23,25;34:11,14,17,
20;35:6,12,18;36:1,9,
12,16;37:1,3;38:11,14,
20,22;39:11,15,17,20,
23;40:11,17,20,25;
41:5,8,12,18,20,22;
42:1,6,7,15;43:6,9,13,
20,22,25;44:2,8,14,24;
45:2,3,7,11
**court's (5)**
    21:18;24:6;26:23;
    27:15;41:17
**cover (1)**
    25:4
**creates (1)**
    9:9
**creating (1)**
    16:1
**critical (1)**
    19:12
**criticism (1)**
    8:17
**critique (1)**
    17:23
**crypto-engine (6)**
    18:1;22:20,22;24:10;
    27:5;28:7
**cryptographic (10)**
    18:2;22:19,20,22;
    23:7;24:4;28:9,12,17;
    30:9
**cut (1)**
    45:11

**D**

**data (66)**
    2:12,14,15;3:5,9,19;
    4:2,12,21,22,23,24;5:3,
    6,8;8:11,18,20,22,25;
    9:17;10:2,8,8;12:21,21,
    24;13:14,19,21,23,24;
    14:1,5,16,17,23,23,25;
    15:16;16:17;18:2,6,8;
    22:21,22;29:20,21;
    30:7,13;31:1,5;32:5;
    37:10,19,20,21,22;
    38:2,6;39:6,13;40:2,
    14;42:2,19
**database (1)**
    12:7
**date (1)**
    44:8
**deadline (1)**
    44:21
**deal (4)**
    28:22;29:13;37:5;
    38:4
**dealing (3)**

7:12,13,24
**decide (1)**
44:17
**decided (1)**
44:18
**deciding (1)**
44:21
**declare (1)**
16:20
**decline (2)**
35:20;36:23
**declined (1)**
34:25
**decompression (2)**
9:1,17
**deemed (1)**
8:2
**defendant (1)**
26:8
**Defendants (2)**
14:14;17:12
**defendants' (1)**
2:24
**deference (1)**
20:8
**define (18)**
4:16;5:6;9:8;10:3,4;
15:6,24;16:2,7,25;
18:11,13,15;24:25;
26:6,19;28:3;37:4
**defined (4)**
9:7;10:6;17:25;28:5
**defines (2)**
10:8;12:12
**defining (1)**
12:2
**definition (27)**
7:25;9:5,19;10:1;
16:1;22:12;24:6,12;
25:18,24,25;28:8,19;
29:12,21;34:1;35:7,13,
20;36:15,23,23;38:23;
39:1,3,11;40:23
**definitional (1)**
26:10
**definitions (3)**
9:6;15:25;22:9
**delegates (1)**
24:9
**delivers (2)**
27:22;28:17
**depends (1)**
43:22
**described (4)**
13:8;21:7;23:8;26:5
**describes (1)**
35:3
**describing (1)**
24:22
**description (9)**
13:10;19:10,14;20:1;
21:3;26:6;35:3,4;39:10
**detail (1)**

7:3
**determining (1)**
20:12
**device (15)**
21:24,25;22:4,10;
30:8,16;31:6,9,12,14,
15;35:25;36:1,19,21
**devices (10)**
22:5;31:4,22;32:16,
19;33:20,21;36:3,4,5
**differ (3)**
9:25;18:11;22:17
**difference (9)**
2:17,23;14:16,22;
16:15,17;22:8;29:20;
41:12
**different (20)**
3:12;4:13,14,14,21,
22;6:22;8:22,23;10:6;
15:1;29:25;31:4;32:23;
33:5,8,12;39:25;42:25;
43:2
**differently (2)**
2:4;3:8
**difficult (2)**
16:8;25:22
**digital (2)**
27:12,20
**direct (1)**
18:19
**directed (1)**
32:25
**directly (2)**
29:3,4
**disagree (3)**
8:10;23:6;41:20
**disagreement (1)**
42:12
**disclose (1)**
25:10
**discovery (4)**
26:1;44:3,7,17
**discuss (1)**
43:21
**discussed (5)**
9:3;13:10;24:7;32:7;
34:10
**display (1)**
12:2
**displayed (1)**
31:19
**displaying (1)**
31:15
**distinguished (1)**
6:20
**distinguishing (1)**
6:9
**distribute (1)**
5:15
**district (1)**
21:18
**divorced (1)**
6:16

**document (10)**
12:2,22,22;13:15,21,
21;15:16,19;20:17;
24:20
**documents (5)**
10:2,6;14:6;15:8,21
**done (2)**
23:12,13
**down (2)**
8:15;17:15
**drawing (2)**
7:21;19:17
**drawings (2)**
24:21,21
**drives (2)**
22:19;28:9
**due (2)**
5:13;28:2
**duplicates (1)**
14:2
**duty (1)**
15:6
**dynamic (2)**
12:2;25:17
**dynamically (1)**
31:4

**E**

**earlier (2)**
16:21;27:4
**easier (1)**
16:2
**easiest (1)**
42:24
**easily (1)**
23:19
**ECC (1)**
22:4
**effect (1)**
23:3
**efficiently (1)**
22:5
**either (5)**
17:12;28:9;31:12;
42:23,25
**element (3)**
21:8,8;23:8
**elements (2)**
19:20;30:14
**eliminates (1)**
43:14
**else (3)**
4:13;21:21;22:11
**embodiment (2)**
27:5;39:10
**embodiments (3)**
8:23,23;9:2
**embracive (1)**
25:12
**encompasses (1)**
32:7
**encrypted (3)**

9:11;23:2;27:22
**encryption (3)**
23:3;24:4,9
**end (1)**
4:15
**endorsed (1)**
41:17
**engine (2)**
2:13;3:4
**engines (4)**
3:21,22;4:20;5:1
**enough (3)**
5:18;29:23;43:12
**entire (1)**
24:8
**entitled (1)**
21:16
**entity (1)**
38:4
**equivalent (1)**
25:21
**erroneous (1)**
16:1
**essentially (1)**
6:7
**etc (2)**
22:21;40:14
**even (2)**
5:24;33:3
**evidence (5)**
19:4,7,8,9;20:18
**exact (1)**
6:14
**exactly (3)**
6:4;11:2;22:1
**example (3)**
14:6;26:3,3
**examples (4)**
8:22;27:12,14,16
**exception (1)**
25:6
**excess (1)**
3:23
**exchange (3)**
25:8,9,11
**exhibit (2)**
7:11;8:4
**expectation (1)**
44:22
**explain (1)**
11:21
**explained (1)**
20:10
**explains (1)**
3:24
**explicitly (1)**
8:2
**exposes (1)**
26:7
**express (2)**
5:14,16
**expression (1)**
19:10

**expressly (1)**
7:20
**extemporaneously (1)**
5:13
**extent (2)**
9:6;25:15
**extracted (1)**
10:2
**extrinsic (1)**
20:17

**F**

**F3d (2)**
20:4,12
**face (2)**
33:3;34:16
**faced (1)**
35:12
**fact (9)**
11:8,8,9;22:4,5,6;
28:4;35:9;40:7
**facts (1)**
11:9
**factual (1)**
10:22
**fair (3)**
14:12;25:24;43:12
**fairly (3)**
7:3;10:3;25:14
**falls (1)**
25:16
**fancy (1)**
23:14
**fashion (2)**
4:15;5:2
**fast (1)**
41:9
**faster (1)**
23:11
**faulty (1)**
38:23
**favoring (1)**
25:6
**Fed (1)**
20:4
**federal (1)**
21:17
**feeds (1)**
28:12
**feel (1)**
5:17
**few (1)**
3:24
**figure (13)**
19:19,23;20:2;23:18,
20,22;27:3,4;33:4;
34:5,15,16;40:7
**file (1)**
32:8
**files (10)**
31:22;32:3,4,9,11,13,
16;33:11,20;36:5

**fill (1)**
45:10
**filled-in (1)**
14:21
**final (1)**
43:4
**financial (1)**
20:20
**find (4)**
3:15;26:21;35:10;
38:23
**finder (2)**
28:4;40:7
**fine (3)**
2:6;27:24;28:9,23;
29:5;32:14;33:22;
38:17
**finished (2)**
37:3;42:21
**first (13)**
2:11;17:25;24:21;
26:15;30:3,5;31:2,10;
34:5;37:4;39:2;40:12;
41:8
**five (1)**
11:20
**followed (1)**
10:12
**following (3)**
17:7;40:12;43:18
**follows (2)**
20:5;37:14
**footnote (2)**
41:15,16
**footnotes (1)**
41:23
**form (4)**
12:1;14:21,22;16:6
**formed (1)**
12:19
**forth (2)**
8:13;28:3
**found (4)**
5:25;7:21;8:9,11
**four (2)**
11:20;26:14
**frame (1)**
43:24
**free (1)**
26:9
**frequency (3)**
29:19;30:13,25
**from/to (1)**
27:10
**front (1)**
26:18
**function (1)**
22:6
**functionality (3)**
35:15,16,16
**further (2)**
9:14;39:7

**G**

**game (1)**
25:22
**gaps (1)**
45:10
**general (1)**
25:6
**generality (1)**
25:3
**generating (1)**
37:19
**given (3)**
25:11;31:8;38:19
**gives (1)**
27:11
**giving (1)**
24:23
**gloss (1)**
20:5
**goal (1)**
26:7
**goes (4)**
13:10;25:17;38:4;
44:12
**good (7)**
2:4;12:16;29:23;
37:1;38:22;39:19;41:5
**great (1)**
44:13
**greatest (2)**
9:6;25:15
**guide (1)**
26:1

**H**

**hand (4)**
8:5;30:9,10,10
**handling (1)**
31:25
**hands (1)**
30:12
**happen (1)**
26:11
**happening (1)**
4:12
**happens (2)**
23:24;26:11
**happy (1)**
8:5
**hardware (1)**
22:1
**heading (2)**
10:24;11:9
**headings (3)**
11:13,13,15
**heads (1)**
12:14
**heard (3)**
5:11;8:14;16:11
**hearing (4)**

16:19;25:23;43:19;
44:7
**help (4)**
12:5,15;40:7;41:14
**helpful (4)**
10:9;28:4;41:11;
43:23
**here's (4)**
11:8,8,8;40:11
**hierarchy (4)**
10:11;12:1;16:5;
42:14
**high (4)**
14:2;29:19,21;30:13
**higher (2)**
29:22;30:19
**hold (3)**
5:15;25:25;44:18
**Honor (69)**
2:7,9,20,22;3:16;
5:11,24;6:2,13;7:1,7,
15;8:1,5,8,14,17;12:16;
14:15;15:3,13,14,18;
17:5,8,19,21;18:25;
19:3,24;20:1;21:5,9,
13;22:1;23:5,18;24:14;
26:23;27:17,24;28:1,
20,24;29:5,16;30:3,5;
32:14,18;33:3,22;34:1,
6,8;35:8;36:6,14,25;
38:10;39:12;40:23;
41:3,7;42:5,10;43:18;
44:6,13
**Honor's (1)**
14:17
**hopefully (1)**
5:14
**host (22)**
18:3,5;22:16,24,25;
23:1,6,14,20,22,24;
24:1,3,5;27:10,15;28:4,
5,11,25;29:1;30:9
**hours (2)**
29:25;30:21
**Howmedica (1)**
20:3

**I**

**ICU (1)**
27:9
**idea (4)**
10:24;32:20;33:1;
35:24
**identification (1)**
39:7
**identity (1)**
37:12
**implementing (1)**
11:5
**implements (1)**
4:1
**implication (1)**

22:10
**important (3)**
14:16;16:15;30:15
**impression (2)**
30:3,5
**inasmuch (1)**
32:3
**incentive (1)**
25:9
**incidentally (1)**
17:3
**includes (1)**
12:7
**including (7)**
18:5;31:16;37:8,21;
38:6,12;39:22
**incorporated (2)**
7:20;8:2
**incorporates (1)**
7:8
**incorporation (1)**
7:18
**indefinite (4)**
15:4;16:14,20;31:7
**indefiniteness (3)**
16:23;26:4,7
**independently (2)**
4:1,3
**independently-processing (1)**
4:10
**indicating (1)**
37:8
**inform (1)**
40:6
**information (33)**
9:11;13:3;14:5,8;
15:8,11,22;23:2,7,15;
27:21;28:13,14,17;
29:4;31:12,17,18;32:6,
11,13,16;33:9,11,19,
20;36:2,4,5,24;38:16,
16;44:20
**informational (1)**
9:8
**infrastructure (1)**
37:17
**infringer (2)**
25:14,16
**initial (1)**
30:1
**initially (1)**
39:20
**in-patent (1)**
35:24
**inputs (1)**
27:9
**inputting (1)**
35:6
**instance (6)**
12:3,6,8;14:21;15:2;
33:1
**instances (8)**
11:25;12:9,12;14:17;

16:4,17;33:4,8
**instead (4)**
6:10;19:17;21:9;
32:4
**instruction (1)**
31:21
**Intellectual (5)**
2:6,20;35:9;39:1,13
**intensive (1)**
24:8
**intent (6)**
19:11,13,25;20:10,
24;21:9
**interest (3)**
18:23;19:1;20:20
**interface (37)**
12:4;18:3;22:24;
27:8,9;31:3,3,9,14,15,
16,19,21;32:15,22,25;
33:1,5,8,10,11,18;34:6,
9,10,13,23;35:3,4,5,10,
11,16,17,24;36:3,7
**interfaces (1)**
15:23
**interject (1)**
42:11
**interrupt (1)**
16:18
**into (12)**
7:21;12:1,19,23;
13:23;16:5;19:8;20:22;
25:17;43:3,16;44:11
**intrinsic (2)**
3:1;6:16
**introduces (1)**
2:24
**invention (15)**
15:21;20:20;21:1,3,
4,11;23:13,11;24:24;
25:1,10;26:5;27:23;
38:5;40:5
**inventor (13)**
18:19,22;19:11;20:6,
9,10,19,24;21:10,18,
23;25:3,9
**inventors (2)**
6:4,20
**inventor's (2)**
19:10;20:1
**inversion (3)**
18:7;22:3,13
**invoices (3)**
14:6,9;15:20
**involved (1)**
34:24
**IPR (1)**
44:21
**isolation (1)**
35:19
**issue (20)**
2:11,19;5:22,23;
6:14,17;26:20;28:1,24;
35:12;41:6,25;42:12,

19,22,24;43:6,7;44:4,8
**issued (2)**
37:9,9
**issuer (1)**
37:9
**issues (2)**
39:1,2
**issuing (2)**
37:18,24,25
**items (2)**
37:20;42:19
**iteratively (1)**
38:7
**IV (12)**
2:12;10:1;16:7;
18:11;22:17;31:3;
36:18;37:7;38:9,17;
41:16,19
**IV's (2)**
8:10;18:16

## J

**job (2)**
24:7;25:18
**JPMC (3)**
24:7;38:19;41:17
**JPMorgan (2)**
28:3;30:2
**judge (3)**
25:13,18;26:9

## K

**keep (1)**
30:7
**keeping (1)**
38:21
**key (14)**
37:6,8,8,12,18,20,21;
38:15;39:7,8;40:2,3,
13;42:20
**kind (3)**
10:25;43:11,23
**kinds (2)**
15:23;26:2
**known (1)**
30:12

## L

**lading (1)**
15:20
**language (7)**
19:15;24:13;38:18;
39:22;40:22;41:4,15
**Lantier (29)**
2:8,9;33:13,15,17,24,
24,25;34:1,12,15,18;
35:1,8,15,22;36:6,10,
14;38:25,25;39:12,16;
40:23;42:10;43:17,21,
23;44:1

**last (3)**
8:17;24:7;26:19
**Law (2)**
17:4;32:9
**laws (1)**
26:5
**leads (1)**
11:22
**learn (1)**
26:13
**least (2)**
25:21;39:21
**leave (4)**
16:9;27:7;29:11;
42:18
**left-hand (2)**
23:20,22
**length (1)**
9:1
**lesson (1)**
25:21
**level (1)**
14:3
**library (1)**
45:10
**lights (2)**
4:8,9
**likewise (2)**
8:11,21
**Lim (30)**
2:5,6,18,19;10:17;
21:25;23:4,5,16,18;
24:5,13,16,18,19;
26:21,23;27:3,8,24;
28:22,23;29:6,9,10,16,
18;31:3;44:6,13
**limit (1)**
25:14
**limited (2)**
25:7,11
**limiting (2)**
9:21,21
**line (7)**
6:21;11:25;13:9,11;
26:24;27:1;39:5
**lines (4)**
4:14;8:20;12:5;
37:14
**list (1)**
41:24
**listen (1)**
20:21
**lit (1)**
4:8
**literature (1)**
25:21
**little (10)**
12:21,23,24,25;
20:11,20;39:25;40:21;
42:7
**live (1)**
31:23
**loading (1)**

18:6
**local (7)**
31:6,9,12,14,15;
36:19,21
**location (1)**
33:2
**locations (2)**
33:8,12
**longer (2)**
10:4;20:19
**look (5)**
7:14;21:14;24:13,15;
29:7
**looks (1)**
33:3
**loose (1)**
40:21
**lot (1)**
25:19
**low (1)**
30:13
**lower (1)**
30:25
**lowest (1)**
42:13

## M

**machines (1)**
34:7
**main (2)**
24:5,6
**maintain (1)**
12:25
**maintained (1)**
13:4
**maintaining (1)**
12:23
**major (5)**
10:11,14,14;11:13,
19
**makes (5)**
5:20;10:14;16:2,16;
23:11
**making (1)**
11:8
**manage (1)**
11:9
**management (20)**
10:23;11:4,16,16,19,
22;12:2,3,9,11,13,20;
13:2,4;14:10;15:9,15;
16:6;44:4,11
**managing (2)**
18:4;22:24
**manifestation (1)**
20:16
**manifested (1)**
20:18
**manipulated (2)**
29:20;31:1
**manner (1)**
15:10

**many (1)**
3:24
**Markman (8)**
9:22;16:19;20:5,7,7,
12;25:23;44:7
**material (3)**
14:6,9;15:20
**math (1)**
22:6
**matter (1)**
30:1
**MAU (1)**
27:6
**maximum (1)**
25:4
**may (22)**
5:11;6:24;8:14;12:5;
14:18;17:14;18:17,19;
21:22;22:7;25:22;
26:23;27:1;29:6;30:20;
33:13;40:16;41:10,14;
43:5,18;45:2
**Maybe (2)**
16:24,24
**mean (2)**
13:25;21:6
**meaning (3)**
20:6,9;31:8
**meaningful (3)**
15:24;30:24;42:8
**means (13)**
3:22,24;4:2,9,16;
6:23;14:1,3;32:20;
34:20;36:7;40:3;41:2
**meant (4)**
7:3,22;10:13;20:25
**measure (1)**
30:13
**Medical (1)**
20:4
**memory (1)**
18:6
**mention (1)**
30:20
**mentioned (1)**
30:20
**mentioning (1)**
30:4
**merely (2)**
20:1,25
**method (6)**
12:5,11;30:16;31:11,
13;37:17
**MIA (2)**
34:9,12
**might (5)**
14:20;16:11;32:2;
43:20,20
**mind (4)**
5:13;17:11;26:9;
30:15
**minute (4)**
27:18;33:14,16;

39:15
**minutes (2)**
29:24;30:21
**misplaced (1)**
8:18
**mobile (26)**
31:3,14,15,15,19;
32:17,19,25;33:5,8,10,
10,11;34:2,6,9,10,13,
23;35:3,4,5,10,10,23;
36:15
**modification (2)**
40:16;41:18
**modified (1)**
5:24
**modify (1)**
33:18
**modular (1)**
27:6
**moment (2)**
16:19;33:6
**monopoly (1)**
25:5,8,11
**more (13)**
2:14;3:5,9,24;10:22;
11:19;14:19;22:4;
29:23;35:22;42:7;
43:10;44:22
**mortared (1)**
12:19
**mostly (1)**
5:18
**motion (3)**
16:20,22;44:18
**motions (2)**
26:2;44:15
**move (7)**
31:9;33:1;34:7;
35:25;36:1;43:8;44:11
**moves (1)**
36:7
**moving (1)**
31:2
**much (3)**
13:20;25:4;44:19
**multiple (2)**
2:16;34:7
**multiplication (13)**
17:25;18:6,8,12,12,
14;19:16,21,23;21:6,7;
22:2,10
**multiprocessing (1)**
6:11
**must (1)**
24:3

## N

**namely (2)**
11:19;23:13
**narrow (1)**
25:14
**necessarily (2)**

30:22;40:6
**need (7)**
  6:23;7:10;9:7;26:21;
  30:14;37:5;45:7
**needed (2)**
  18:15;43:18
**needs (2)**
  5:4;36:23
**negative (2)**
  22:14,14
**network (5)**
  27:12,20;31:5,12,14
**new (5)**
  13:22;16:22;17:4;
  38:4;43:2
**next (21)**
  6:21;8:7,8;9:14,17;
  16:4,10;29:15,19;
  36:18,24;37:3,6;41:5,
  6;42:2,18,19,22;44:4,
  12
**Nice (1)**
  17:17
**Nicholas (1)**
  31:24
**nonsensical (1)**
  11:23
**normalized (3)**
  13:24;14:1,3
**note (1)**
  14:16
**number (14)**
  5:9;7:19;8:21;10:14;
  14:5;16:22,22;17:3;
  22:14,14,15,15;24:20;
  33:12
**numbers (1)**
  27:7

## O

**object (1)**
  15:1
**objecting (1)**
  41:19
**objectionable (1)**
  39:21
**objective (1)**
  20:16
**objects (4)**
  7:12;12:12,13;13:24
**obtaining/obtained (1)**
  36:21
**occurred (1)**
  26:13
**off (7)**
  2:2;4:7,8;15:17;
  17:23;44:9,18
**offer (1)**
  14:18
**offered (1)**
  42:5
**offers (1)**

25:9
**office (4)**
  25:13;32:10;44:21,
  23
**one (38)**
  2:14;3:5,9,24;4:18;
  8:2;10:11,18;11:20;
  12:6;13:16;16:15;
  20:23;21:22;22:5,6;
  27:18;30:9;31:9,25;
  33:2,12,14,16;34:22;
  35:22,25;36:1,7;37:6;
  39:2;40:16;41:14;42:3,
  4,11;43:17;44:23
**only (4)**
  23:8;28:24;41:12;
  42:12
**op-code (1)**
  29:15
**open (1)**
  2:1
**operable (4)**
  4:20;18:3;22:23;
  31:9
**operate (2)**
  8:24,24
**operated (1)**
  29:21
**operates (2)**
  4:1;6:6
**operations (2)**
  18:8;24:9
**order (10)**
  2:7;5:15;9:15;26:19;
  42:22;43:6,8,25;44:4,8
**orders (2)**
  14:7;15:20
**organizing (4)**
  11:25;15:22;16:4,12
**original (1)**
  39:3
**originally (1)**
  8:13
**Osteonics (1)**
  20:3
**others (5)**
  8:24,24;9:25;25:10;
  36:22
**otherwise (1)**
  43:3
**out (14)**
  4:15;8:6;9:15;10:7;
  12:22;14:2;19:21;27:7;
  29:11;34:2;39:23;40:7;
  41:1,23
**outline (1)**
  10:11;11:6
**output (2)**
  4:24;18:9
**outputs (1)**
  27:9
**outside (1)**
  25:16

**over (1)**
  30:6
**own (1)**
  19:22
**owner (1)**
  39:8

## P

**page (1)**
  20:4
**paragraph (1)**
  26:25
**parallel (20)**
  2:12,13;3:4,12,20,
  21;4:1,6,6,8,20,23;5:1,
  2,6;6:5,6;7:4,22;9:17
**parameters (4)**
  37:13;39:8;40:19;
  41:2
**parenthesis (1)**
  20:7
**part (6)**
  8:3;14:24;21:19;
  26:6,10;27:1
**particular (2)**
  20:9,11
**parties (7)**
  9:20,25;18:11;22:17;
  26:1,14;42:12
**parties' (4)**
  3:2,3,7;26:17
**parts (1)**
  4:14
**party (2)**
  43:7,10
**pass (2)**
  9:11;17:2
**patent (45)**
  2:12;7:8,13,19,21;
  8:3,4;9:19;12:17;16:4,
  10,23;17:2,22,24;
  18:22;19:1,17,20;
  24:20,23,24;25:5,8,12,
  13,16,19;26:5,13;
  31:10;32:7,10,20,24,
  25;33:3;34:16;35:3,4;
  38:5;39:4;40:24;44:20,
  23
**patents (1)**
  25:5
**Patent-writing (1)**
  25:20
**PC (1)**
  34:21
**people (1)**
  15:23
**perform (2)**
  5:1;35:17
**performing (1)**
  18:7
**performs (2)**
  18:12,13

**perhaps (2)**
  3:16;32:6
**period (3)**
  20:19;38:12;40:13
**person (2)**
  21:9,14
**personal (2)**
  27:12,20
**phrase (3)**
  9:24;10:4;26:15
**phrased (1)**
  3:8
**phraseology (1)**
  11:10
**phrases (2)**
  11:23;26:16
**picked (1)**
  15:17
**picks (2)**
  39:11
**picture (1)**
  23:19
**piece (1)**
  3:5
**pieces (4)**
  12:20,23,24,25
**place (2)**
  12:19;28:25
**placed (1)**
  12:18
**places (2)**
  17:9;32:23
**plain (1)**
  31:8
**plaintiff (1)**
  31:24
**plaintiffs (1)**
  17:12
**plan (3)**
  5:15;44:5,11
**planned (1)**
  2:9
**Please (1)**
  40:25
**plurality (11)**
  3:20,21,22,24;4:19,
  25;5:2;12:1;16:5;
  31:16,18
**point (22)**
  5:18;8:7,8;9:18;
  11:19;14:15;15:5;
  16:25;22:12;23:17,19;
  26:12;32:23;35:22;
  36:10;38:8;41:22;42:9,
  13,16;43:17;44:20
**pointed (2)**
  34:8;40:9
**pointer (1)**
  37:1
**pointers (3)**
  13:2;31:16,19
**pointing (1)**
  41:23

**points (10)**
  11:8,12,12,17,18;
  12:7,9;20:23;33:15;
  34:3
**policy (1)**
  25:6;41:6
**portion (4)**
  4:21,22,24,25
**portions (1)**
  5:3
**position (1)**
  9:20
**positive (2)**
  22:14,15
**possible (4)**
  9:6;25:4,13,15
**practice (1)**
  25:15
**preambles (1)**
  9:21
**preclusive (1)**
  4:17
**preferred (1)**
  27:5
**prepared (1)**
  26:14
**present (1)**
  8:18
**presented (1)**
  10:4
**previous (1)**
  27:15
**previously (1)**
  29:21
**primary (31)**
  5:23;7:12;9:24;10:5,
  5,13,22,25;11:3,5,7,13,
  17,18,20,21;12:1,6,8,9;
  13:4,14,20,24;14:9,13,20,
  21,25;15:7,15;16:5
**printed (1)**
  3:18
**prior (4)**
  6:21,22;24:23;41:17
**private (1)**
  20:18
**probably (5)**
  22:7,8;29:23;30:17;
  44:14
**probative (1)**
  20:11
**problem (2)**
  10:2;15:25
**procedure (1)**
  26:12
**proceed (1)**
  2:10
**proceeding (1)**
  43:11
**process (7)**
  21:19;23:4;24:3,11;
  37:19,23,25
**processes (1)**

37:16

**processing (15)**
2:16,24;4:2,14;5:9,
25;6:11,12,14;7:2;
9:12;18:2;22:17,21,22

**processor (31)**
18:3,5;22:16,19,24,
25;23:1,6,14,20,23,24;
24:1,3,5,5;27:10,13,15,
21;28:4,5,8,11,12,16,
25;29:1;30:8,9,11

**processors (2)**
30:7,12

**produce (2)**
4:23;5:2

**PROFESSOR (6)**
17:5,8,11,16,19,21

**proffered (1)**
38:15

**proposal (1)**
9:10

**proposals (1)**
2:18

**propose (3)**
6:2;42:25;43:5

**proposed (4)**
2:3;8:12;28:8;38:21

**proposes (3)**
10:1;22:17,18

**proposition (2)**
10:12,14

**propositions (3)**
10:12,15,16

**protection (1)**
25:4

**provided (3)**
27:10,14;39:20

**provides (1)**
8:21

**providing (1)**
21:10

**proximity (2)**
14:25;28:25

**public (14)**
37:6,8,8,12,18,20,21;
38:15;39:7,8;40:2,3,
13;42:20

**publicly (1)**
25:9

**purchase (2)**
14:6;15:20

**purpose (1)**
19:22

**purposes (2)**
9:8;38:20

**put (5)**
3:16,19;36:3;38:11;
43:3

**puts (2)**
13:2;43:9

**putting (2)**
22:12;29:3

## Q

**qualified (1)**
21:14

## R

**rate (10)**
29:20,21,23,25;30:6,
17,18,18,19,24

**rather (3)**
3:18,23;30:18

**RAY (41)**
6:24,25;7:1,7,10,15,
18;8:1,8;14:15;15:14;
16:11,14,18;17:1;
18:17,18,19,22,25;
19:3,6,9,13;20:14,23;
21:5,13,22;22:7,23:6;
26:3;27:17,25;28:1,14,
20,24;29:5;30:1,20

**react (2)**
5:16;9:16

**read (12)**
5:5;13:12;22:21,21;
24:14;25:22;27:1;
28:21;31:10;34:2;
35:21;41:8

**reader (1)**
24:23

**reads (2)**
22:20;37:14

**really (2)**
2:17;28:11

**reason (6)**
2:4;7:1;9:8;16:14;
30:6;38:17

**reasons (3)**
11:20,21,21

**receive (1)**
4:20

**receiver (2)**
38:6,16

**recitation (1)**
3:6

**recites (1)**
5:25

**reciting (1)**
21:24

**recognize (1)**
3:3

**reconsideration (1)**
43:8

**record (42)**
3:1;6:16;9:24;10:5,5,
13,22,23,25;12:1,2,3,6,
8,9,10,12,13,20;13:2,4,
5,14,20;14:9,11,13,20,
21,25;15:2,2,7,9,15,15;
16:5,6;17:24;28:21;
44:9,10

**refer (6)**

7:5,10,15;8:23;
26:23;34:9

**reference (7)**
7:8,19,20;8:2;10:1,
14;34:5

**referring (2)**
23:23;27:3

**refers (4)**
8:10;14:23;23:20;
34:12

**reflected (2)**
3:6;34:23

**reflecting (2)**
33:19;36:3

**reflects (1)**
36:15

**rehash (2)**
43:1,15

**rehearing (1)**
43:14

**related (5)**
12:24,24;37:13;39:8;
40:19

**relationship (3)**
12:7;13:1;28:6

**relevant (3)**
21:10,23;23:9

**reliance (1)**
21:18

**relied (1)**
20:6

**remember (2)**
24:11;30:8

**repeat (1)**
28:20

**reply (1)**
38:3

**representative (1)**
3:17

**request (2)**
37:23;38:1

**requested (1)**
36:20

**requesting (3)**
36:20;37:17,19

**required (2)**
37:20;42:19

**requirement (1)**
29:7

**requires (1)**
20:8

**reschedule (1)**
43:18

**resources (4)**
31:11,17,18;36:24

**respect (2)**
2:23;28:2

**respectfully (1)**
36:14

**respective (5)**
4:21,22,23,25;5:3

**respond (1)**
6:24

**response (1)**
34:3

**responses (1)**
43:24

**responsibility (1)**
24:10

**rest (1)**
25:25

**restrictive (4)**
3:11,14;29:6;32:2

**retrieved (1)**
36:18

**retrieving (6)**
31:11,13,17;32:11;
36:18,22

**returning (2)**
38:2;42:2

**revealing (1)**
14:18

**reverse (2)**
11:11,11

**reversing (1)**
11:1

**review (1)**
14:17

**Revocation (1)**
41:24

**right (12)**
10:17,24;13:18;
15:17;17:22;19:23;
24:2;29:13;32:1;39:23;
41:1;44:11

**risk (1)**
16:1

**robe (1)**
17:14

**room (1)**
4:8

**RSA (1)**
22:4

**rule (3)**
19:4;7:20:15

**ruling (1)**
44:23

**run (6)**
24:8;28:9,11,12,15;
30:14

**running (1)**
33:5

**runs (3)**
22:18;24:6;27:18

## S

**same (22)**
2:16;3:10,11,14;
4:10;5:9;6:13;8:3;9:12,
18,18;13:17;16:4;
20:15;22:12,13;33:4,9;
34:22;41:25;43:14;
45:1

**saying (4)**
11:7;14:25;23:14;

32:18

**schedule (3)**
2:2;26:14;44:17

**School (1)**
17:4

**scope (1)**
20:12

**screen (1)**
34:15

**seated (2)**
10:19,20

**second (3)**
9:24;21:13;26:17

**seconds (1)**
29:24

**section (4)**
7:18;16:21,22;26:4

**secure (1)**
37:15

**seems (1)**
40:21

**select (4)**
31:21;32:15;33:20;
36:5

**self-signing (1)**
37:21

**sender (2)**
38:6,15

**sending (1)**
37:22

**sense (3)**
5:20;32:2,20

**sent (1)**
38:6

**sentence (2)**
40:9,12

**separate (2)**
13:22;15:16

**sequential (1)**
3:13

**serial (4)**
3:13;6:22;7:3,22

**series (2)**
4:6,8

**server (3)**
31:5,13,14

**session (2)**
5:16;17:23

**set (8)**
8:13;10:7;28:3;
43:23,25;44:8,11,16

**several (3)**
6:12;8:25;27:14

**short (2)**
5:14;44:2

**Show (2)**
23:16;24:18

**showed (1)**
27:4

**shown (1)**
27:11

**shows (6)**
7:2;19:20;33:4,4,7;

36:1
**side (4)**
23:20,22;42:23,25
**sign (4)**
18:7,9;22:3,13
**signal (4)**
27:13,21,22;29:15
**signals (4)**
23:7;28:14,17;29:4
**signature (2)**
37:23;38:3
**signatures (1)**
38:7
**signed (3)**
37:11,22;38:5
**similarly (1)**
42:16
**simply (1)**
24:2
**simultaneously (1)**
34:7
**Sit (3)**
8:15;17:14;30:12
**skill (2)**
21:10,14
**sleep (1)**
5:4
**slide (2)**
3:17;6:3
**slides (1)**
7:5
**slight (2)**
41:18;42:13
**slightly (1)**
18:11
**solely (4)**
18:13,15;19:23;
21:21
**solidifies (1)**
13:2
**someplace (1)**
4:13
**soon (1)**
45:1
**sorry (1)**
18:25
**source (1)**
35:19
**speak (3)**
10:17;33:23;38:9
**speaking (1)**
38:24
**spec (1)**
8:9
**special (2)**
40:4;43:14
**specially (6)**
37:10;39:6,22;40:1,
8,14
**specific (6)**
31:5,11,17,18;32:5;
36:24
**specification (23)**

3:4;6:1,4,15,18;7:2,
7,20;8:1,3,12,19,19,21;
9:2;16:16;21:7,15;
27:1,14;35:24;40:1,5
**specifications (10)**
7:6,13,14;12:15;
13:6;23:16;24:15,22;
39:24;41:1
**speed (11)**
29:22,24,25;30:6,7,
11,17,18,19,19,24
**speeds (1)**
4:13
**spell (1)**
41:1
**stable (1)**
32:23
**stage (1)**
44:11
**start (1)**
12:18
**starting (1)**
26:24
**starts (2)**
26:13;27:3
**stated (2)**
31:10;39:10
**statement (4)**
6:3,18,20;35:23
**states (2)**
11:25;20:5
**stay (3)**
10:19,20;44:7
**step (2)**
21:8,8
**step-by-step (2)**
19:19;21:1
**steps (1)**
21:3
**still (2)**
5:24;34:2
**stored (2)**
31:5,12
**storing (1)**
18:6
**structure (14)**
10:9;12:17;14:22;
37:10,19,22,22;38:2,6;
39:6,14;40:2,14;42:2
**students (2)**
17:3;24:20
**subject (2)**
27:23;28:6
**Subjective (6)**
19:11,13,25;20:10,
24;21:8
**submission (1)**
43:24
**submissions (1)**
43:18
**subsidiary (4)**
10:12,15;11:14,21
**substantive (2)**

2:17,22
**substitute (1)**
29:22
**subtests (1)**
19:22
**subtle (1)**
16:15
**succeeding (1)**
17:6
**succinctly (1)**
13:8
**sufficient (1)**
42:15
**suggest (1)**
15:14
**suggested (2)**
15:25;29:12
**suggesting (1)**
14:4
**suggestion (3)**
34:6;39:18;40:15
**suggestive (1)**
5:19
**suggests (6)**
2:13,15;29:24;31:3,
8;37:7
**suitable (1)**
28:18
**summary (1)**
14:12
**superfluous (1)**
6:14
**superiority (1)**
11:4
**support (1)**
35:24
**supported (1)**
2:25
**supposed (6)**
21:2,3;23:12;25:23,
23;37:9
**Sure (3)**
16:13;23:18;38:13
**survives (1)**
44:25
**switched (1)**
4:7
**symbol (2)**
9:3,4
**symbols (2)**
6:6;8:24
**sync (1)**
30:7
**synonyms (2)**
35:11,11
**system (5)**
3:20;4:10,14;22:18;
27:19;37:15

**T**

**table (1)**
12:7

**tails (1)**
12:14
**talked (1)**
21:24
**talking (2)**
29:1;40:10
**talks (1)**
32:10
**teach (1)**
23:12
**teacher (1)**
17:18
**teaches (2)**
15:22;23:12
**teaching (1)**
40:5
**Tech (1)**
20:4
**telephone (1)**
34:22
**telling (1)**
16:21
**tells (1)**
3:4;6:23;41:16
**tension (2)**
25:2,17
**tensions (1)**
26:8
**tentative (3)**
5:14;9:15;42:23
**term (48)**
2:11,23,24,25;3:3,12,
23;5:6,25;6:14,23;8:9,
18,19;9:2,17;10:3,6;
16:11,14;17:25;18:15;
20:11,25;22:16;24:17;
25:11;26:4,15;28:3;
29:16,19;30:2,3,4,5;
31:7,8;34:2,18;35:2,5,
22;36:25;37:4;38:19;
39:4,13
**terms (13)**
2:3;4:5,17;9:7;
15:24;22:2;25:25;26:6,
16;37:5;39:11;42:11;
44:3
**testified (2)**
18:24;19:2
**testimony (9)**
18:19,21;19:6;20:5,
8;21:10,15,19,23
**Thanks (3)**
8:6;44:18;45:7
**therefore (1)**
6:16
**thinking (1)**
11:1
**third (1)**
26:17
**THOMPSON (36)**
10:19,19,21;11:2,6,
15;12:14,16;13:8,13,
16,19;14:1,12,24;15:7,

12;38:10,11,13,17;
39:17,19,25;40:16,18,
21;41:3,7,10,14,21,25;
42:4;43:5,12
**though (4)**
11:6;19:21;41:11;
44:2
**thought (4)**
5:21;22:9;15:45:9
**three (5)**
5:5;11:20;12:11;
27:11;38:25
**times (1)**
5:5
**together (1)**
29:13
**token (2)**
9:2,4
**top (3)**
7:15;26:25;27:11
**topic (1)**
18:20
**trick (1)**
4:16
**trust (3)**
38:8;42:9,16
**trustworthiness (3)**
37:7;38:15;40:13
**try (3)**
16:2;25:13,18
**trying (1)**
16:25
**turn (2)**
9:7;34:23
**tutorial (1)**
26:13
**twice (1)**
13:8
**two (11)**
2:18;11:20;20:23;
22:8;33:4,7,15;39:21;
41:5,12;42:18
**type (23)**
9:24;10:8,13,23;
12:2,3,8,9,12,13,20;
13:2,5,20;14:11,13,20,
21,25;15:2,3,10;16:6
**types (20)**
10:5,5,22,25;12:1,7,
10;13:4,14;14:10,17,
17,24;15:8,15,15,16,
21;16:5,17

**U**

**uncompressed (4)**
4:1,21,22,24;5:3
**under (3)**
11:15;16:21;26:4
**underpinnings (1)**
10:23
**understandable (1)**
25:19

**Understood (4)**
17:1;20:16,17;26:9
**unduly (1)**
3:14
**unique (1)**
39:7
**unit (38)**
2:14;3:9;4:3,12;8:11,
18,19,22;17:25;18:2,5,
5,6,7,7,7,8,9,9,12,12,
13;19:16,21,22;21:6,7;
22:2,3,3,13,13,18,23,
25;27:6,8,10
**units (16)**
2:16,25;5:9,25;6:11,
12,14;7:2;8:24;9:12;
14:5;15:8,10;19:22;
22:6;29:25
**unless (1)**
2:3
**unnecessarily (2)**
5:24;40:25
**up (9)**
3:16,19;8:5;13:10;
15:17;18:20;22:16;
39:11;41:18
**uphold (1)**
21:18
**upon (2)**
17:23;36:25
**use (12)**
3:18;20:21;30:18,18;
32:9,20;33:11;34:25;
36:19,21;38:4;41:22
**used (5)**
15:23;20:11;24:17;
26:3,16
**useful (1)**
4:17
**user (16)**
12:3;15:9;31:3,5,11,
17,18,21;32:5,6,11,15;
33:10,20;36:4,24
**users (1)**
14:8
**user's (5)**
37:12,12;39:6;40:2,3
**uses (4)**
8:19;32:24;35:5;
39:3
**using (6)**
4:22;9:2,7;25:16;
31:18;45:10
**usually (1)**
44:9
**utilitarian (1)**
11:5

**V**

**valid (1)**
44:24
**validated (1)**

42:17
**validity (3)**
37:13;39:9;40:19
**variable (1)**
8:25
**various (11)**
2:11;9:12;10:12;
15:23;26:2;31:22;
32:16,18;33:19;36:2,4
**Ventures (5)**
2:6,20;35:9;39:1,13
**verify (1)**
38:5
**verifying (2)**
38:1,7
**version (3)**
3:18;18:9;42:23
**versus (1)**
4:6
**view (3)**
5:17;20:19;45:6
**views (1)**
26:17
**void (1)**
16:23
**vouches (3)**
37:7;38:14;40:13

**W**

**walk (1)**
13:11
**walk-through (1)**
20:25
**wants (11)**
3:9;18:11,13;25:3,
12;36:18,20;37:10;
38:4;42:25;44:10
**way (22)**
3:23;4:17;5:19;8:16;
9:8,22;10:7;14:7;
15:22,24;16:2,9;20:17;
26:7;30:12;36:16;
38:18;41:14;42:18;
43:5,13;44:23
**ways (1)**
25:19
**weight (2)**
20:12;21:16
**what's (6)**
4:12;21:12;39:17;
40:3;43:1,7
**Whereas (1)**
6:2
**wherein (6)**
3:21;4:19,25;12:6,8,
11
**whole (1)**
11:22
**Whose (1)**
18:21
**willing (1)**
41:1

**win (1)**
11:19
**Windows (1)**
34:21
**wire (1)**
4:6
**wiring (2)**
4:6,6
**within (1)**
15:16
**without (2)**
4:7;40:7
**word (17)**
18:15;20:16;21:21;
23:14;29:3,11,20;
32:17,19;34:2,11,12;
36:15;38:12;39:3;40:6;
41:13
**words (3)**
6:11;11:23;25:20
**work (10)**
2:2;3:5;8:6;15:12;
16:3;19:18,19;21:8;
31:20;41:4
**worked (3)**
19:16;20:2;21:1
**works (4)**
4:3;21:11;23:13;
35:19
**worth (2)**
16:9;20:22
**Wright (1)**
20:3
**writer (1)**
25:12
**writing (1)**
43:3
**written (3)**
35:3,4;38:18
**wrong (1)**
39:17

**X**

**XML (13)**
10:2,5;12:22,22,25;
13:15,20,21,22,23;
14:1;15:16,19

**Y**

**years (1)**
25:11
**yesterday (6)**
9:3;18:20;19:14;
21:23;26:14;34:10
**York (1)**
17:4

**Z**

**Zolotorev (11)**
2:19,21,22;3:16;4:4;

5:11,22;6:10,13;8:14,
17

**0**

**002 (2)**
31:2;37:3
**081 (1)**
9:19

**1**

**1 (7)**
9:25;12:6,11;23:18,
20;27:3;34:19
**10 (2)**
27:5;39:5
**102a (2)**
33:7;34:8
**102b (2)**
33:7;34:8
**11 (1)**
27:6
**112 (3)**
16:21,22;26:4
**1337 (1)**
20:4
**1346 (1)**
20:4
**15 (1)**
33:4
**16 (1)**
44:21
**18 (2)**
11:25;37:14

**2**

**2 (4)**
9:25;12:5;26:24;
27:1
**20 (1)**
11:25
**2008 (1)**
20:4
**23 (1)**
13:11
**271 (3)**
3:12;7:8,21
**29 (1)**
8:20

**3**

**3 (2)**
13:9;27:1
**30 (1)**
12:5
**31 (2)**
8:20;37:14
**35 (1)**
12:5
**36 (1)**

39:5
**37 (1)**
39:5

**4**

**4 (8)**
3:17;13:11;18:1,1;
22:16,20;29:15;30:15

**5**

**5 (3)**
19:19,23;20:2
**52 (1)**
20:12
**540 (1)**
20:4
**574 (1)**
37:4

**6**

**6 (1)**
6:3
**6,208,273 (1)**
7:19
**64 (1)**
26:24
**66 (1)**
13:9
**666 (6)**
16:10;17:2,22,24;
18:22;44:21

**7**

**7 (2)**
7:16;34:19

**8**

**8 (1)**
8:20

**9**

**985 (1)**
20:13