# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and<br>INTELLECTUAL VENTURES II LLC,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>CITIGROUP, INC., CITICORP, and<br>CITIBANK, N.A.,<br><br>　　　　　Defendants. | 14 Civ. 4638 (AKH)<br><br><br>**ORAL ARGUMENT REQUESTED** |

# DEFENDANTS CITIGROUP, INC.'S, CITICORP'S, AND CITIBANK, N.A.'S
# RESPONSIVE SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.    INTRODUCTION .................................................................................................. 1

II.   '271 PATENT ........................................................................................................ 1

III.  '081 PATENT ........................................................................................................ 2

    A.    The Court's Summary of the '081 Patent ................................................... 2

    B.    "primary record type" (claims 1-4, 10-13, 21-24) ...................................... 2

    C.    "management record type" (claims 1-4, 10-13, 21-24) ............................. 3

        1.    "grouping" .................................................................................... 4

        2.    "does not include any redundant data" ......................................... 5

IV.  '574 PATENT ........................................................................................................ 7

    A.    "[public key] certificate" (claims 18-31) .................................................... 8

    B.    "certifying and returning the data structure" (claim 18) ........................... 12

V.   CONCLUSION .................................................................................................... 13

CERTIFICATE OF SERVICE

ADDITIONAL SUPPORTING DOCUMENTS

    Declaration of Omar A. Khan in Support of Defendants Citigroup, Inc.'s, Citicorp's, and Citibank, N.A.'s Responsive Supplemental Claim Construction Brief

    Exhibit HHH: Patent File History for U.S. Patent No. 7,984,081, Reply Pursuant to 37 C.F.R. § 1.111 (Dec. 14, 2010)

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adrain v. Genetec Inc.*,
  2009 WL 3063414 (E.D. Tex. Sept. 22, 2009) ............................................................................9

*Al-Site Corp. v. VSI International, Inc.*,
  174 F.3d 1308 (Fed. Cir. 1999) ..................................................................................................9

*Arthur A. Collins, Inc. v. Northern Telecom Ltd.*,
  216 F.3d 1042 (Fed. Cir. 2000) ................................................................................................11

*Aventis Pharma Deutschland GmbH v. Lupin Ltd.*,
  403 F. Supp. 2d 484 (E.D. Va. 2005) ..................................................................................... 8-9

*CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*,
  92 F.3d 1203 (Fed. Cir. 1996) ............................................................................................. 9-10

*CVI/Beta Ventures, Inc. v. Tura LP*,
  112 F.3d 1146 (Fed. Cir. 1997) ................................................................................................10

*Helifix Ltd. v. Blok-Lok, Ltd.*,
  208 F.3d 1339 (Fed. Cir. 2000) ..................................................................................................2

*In re Texas Holdings Corp.*,
  498 F.3d 1290 (Fed. Cir. 2007) ..................................................................................................9

*Intellectual Ventures II LLC v. JP Morgan Chase & Co.*,
  No. 1:13-cv-03777 (S.D.N.Y.) ........................................................................................ *passim*

*Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*,
  302 F.3d 1352 (Fed. Cir. 2002) ............................................................................................ 7-8

*Kara Technology Inc. v. Stamps.com Inc.*,
  582 F.3d 1341 (Fed. Cir. 2009) ..................................................................................................6

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) .....................................................................................................2

*Sears Petroleum & Transport Corp. v. Archer Daniels Midland Co.*,
  2007 WL 2156251 (N.D.N.Y. July 24, 2007) .........................................................................10

*TQP Development, LLC v. Intuit Inc.*,
  2014 WL 2810016 (E.D. Tex. June 20, 2014) ........................................................................10

*Typhoon Touch Technologies, Inc. v. Dell, Inc.*,
  659 F.3d 1376 (Fed. Cir. 2011) ................................................................................................11

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
    442 F.3d 1322 (Fed. Cir. 2006)..............................................................................................11

I.     INTRODUCTION

In its supplemental claim construction brief, *see* Dkt. 84 (IV Supp. Br.), IV seeks once again to change the scope of its patents by ignoring express disclosure therein, recycling the same arguments already rejected by the Court, and urging the Court to ignore the factual record and arguments made in this case that support different constructions than those rendered by this Court in another case involving a different defendant.  The Court should reject IV's modifications to the Court's provisional constructions.[1]

II.    '271 PATENT

In its opening supplemental brief, Citi offered proposals for clarifying the Court's provisional constructions of "parallel data compression algorithm" and "parallel data decompression algorithm" to ensure the constructions of either term did not inadvertently encompass serial algorithms.  As Citi explained, the Court's provisional constructions inadvertently encompassed serial algorithms because "IV contends a 'unit' can be any data."  Dkt. 82 (Citi Supp. Br.) at 4-7.

In its opening supplemental brief, IV confirmed its position.  In opposing the Court's provisional construction of "primary record type" for the '081 patent, IV stated that the term "any unit of information" encompasses "anything."  Dkt. 84 (IV Supp. Br.) at 3.  This only confirms that IV's broad interpretation of "unit" will broaden the scope of the '271 patent claims beyond what is described in the '271 patent.  Accordingly, the Court should remove the ambiguous term "unit" from the provisional constructions of "parallel data compression algorithm" and "parallel data decompression algorithm" by specifying that a "parallel data compression algorithm" operates on

---

[1]     As noted in its own supplemental brief, Citi respectfully maintains that the constructions articulated in its opening and responsive claim construction briefs are correct, and that they are preserved for appeal.  *See* Dkt. 82 (Citi Supp. Br.) at 1.

1

symbols, and a "parallel data decompression algorithm" operates on tokens. Dkt. 82 (Citi Supp. Br.) at 4-7.

**III.    '081 PATENT**

    **A.    The Court's Summary of the '081 Patent**

The Court's summary of the '081 patent should be left intact, as its high-level description of the subject matter of the patent is sufficient for purposes of the Court's provisional claim construction order.  However, Citi does not oppose modifying the Court's summary of the '081 patent as set forth in IV's submission, *see* Dkt. 84 (IV Supp. Br.) at 1, with the understanding that: (1) a "summary" of the patent has no bearing on the issues of infringement or invalidity, both of which are determined solely on the basis of the claims, as properly construed, *see Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc) ("The first step [in an infringement analysis] is determining the meaning and scope of the patent claims asserted to be infringed.  The second step is comparing the properly construed claims to the device accused of infringing." (citation omitted)), *aff'd*, 517 U.S. 370 (1996); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000) ("[A]n anticipation analysis involves a comparison of the construed claim to the prior art."), and (2) Citi's non-opposition does not waive its right to object to any later use of this "summary," or any later "summaries," that may arise in this case (e.g., in jury instructions).

    **B.    "primary record type" (claims 1-4, 10-13, 21-24)**

| Citi's Original Construction | IV's Original / Current Construction | Court's Provisional Construction |
|---|---|---|
| "a data type that defines a data structure" | "a data type that defines a data structure to contain data extracted from XML documents" | "a unit of information, as a subset of a more general category of information, extracted from business documents and arranged for a user" |

2

The Court's provisional claim construction order explained that "[a]ll arguments made by the parties in submissions made prior to the *Markman* hearing held March 26, 2015 have been considered," and ordered that "the parties ***shall not make duplicative arguments in their submissions***." Dkt. 77 (Prov. Claim Constr. Order) at 7 (emphasis added). Consistent with that instruction, Citi's supplemental claim construction brief used the Court's provisional claim construction for "primary record type" as a starting point and proposed minor refinements to better accord with the patent's specification. In contrast, IV simply reargues its original construction of the term using the very same arguments and evidence already set forth in its prior claim construction briefs. *See* Dkt. 55 (IV Op. Br.); Dkt. 64 (IV Resp. Br.). Citi has already addressed why IV's original arguments are incorrect. *See* Dkt. 59 (Citi Op. Br.) at 59-60; Dkt. 60 (Citi Resp. Br.) at 38-40.

### C. "management record type" (claims 1-4, 10-13, 21-24)

| Citi's Original Construction | IV's Original Construction | Court's Provisional Construction | IV's New Construction |
|---|---|---|---|
| "a data type that defines a user-defined collection of primary record types" | "a data type that defines a **collection** of primary record types organized by a pointer structure" | "collection of primary record types organized into a hierarchy" | "a data type that defines a **grouping** of primary record types into a hierarchy and **does not include any redundant data**" |

Similar to its approach for "primary record type," IV's proposed "revision" to the Court's construction of "management record type" ignores the Court's instruction not to make "duplicative arguments" and mostly reargues its original construction of that term. IV's proposed "revision" merely repeats its original construction, with the addition of two terms/phrases: (1) "grouping" and (2) "does not include any redundant data." In so doing, IV once again almost exclusively reprises arguments and evidence already offered in its prior briefing. *See* Dkt. 55 (IV

3

Op. Br.); Dkt. 64 (IV Resp. Br.).  Once again, Citi has already explained why IV's original construction is wrong.  *See* Dkt. 59 (Citi Op. Br.) at 60-61; Dkt. 60 (Citi Resp. Br.) at 40.

IV's proposed addition of "grouping" and "does not include any redundant data" to its original construction (or any other construction) should also be rejected.  Neither addition is credible because IV now apparently ***disagrees with its own expert***, who opined that "a person of ordinary skill would refer to the specification and determine that 'management record type' means 'a data type that defines a collection of primary record types.'"  Dkt. 58-6, Ex. F (Decl. of Dr. John P. J. Kelly) ¶ 20.  IV's expert never once suggested that the terms/phrases "grouping" and "does not include any redundant data" belonged in a proper construction of "management record type."  *See id.* ¶¶ 17-20.  These terms/phrases should also be rejected for the following further reasons.

### 1. "grouping"

***First***, the Court's provisional construction already includes a concept similar to "grouping," namely that a management record type is a "*[c]ollection* of primary record types."  Dkt. 77 (Prov. Claim Constr. Order) at 4 (emphasis added).  IV's proposed "revision" (i.e., modification of its original construction) instead uses "***grouping*** of primary records types."  Dkt. 84 (IV Supp. Br.) at 5 (emphasis added).  A "collection" and a "grouping" are obviously generally similar concepts, and nowhere does IV specifically explain why "grouping" needs to replace "collection."  The Court's preferred vernacular, "collection," should therefore be left intact.

***Second***, the patent specification itself uses the term "collection" to refer the set of primary record types that make up a management record type, consistent with the Court's chosen term: it states that "[a] MRT is a . . . *collection* of PRTs."  Dkt. 57-23 to -24, Ex. U ('081 patent) at 4:13-14 (emphasis added).

***Third***, IV's arguments are inconsistent with those it previously advanced.  When Citi cited the unqualified statement in the specification that "[a] MRT is a ***user-defined collection*** of PRTs

4

organized into a hierarchy," *see* Dkt. 59 (Citi Op. Br.) at 61; Dkt. 60 (Citi Resp. Br.) at 40, IV argued that this statement did not mean management record types had to be, by definition, "user-defined." Now, IV cites the syntactically identical statement that **"[a] MRT is** a grouping of PRTs . . . ," to argue that MRTs must be a "grouping" of primary record types—i.e., that this statement is definitional. Dkt. 84 (IV Supp. Br.) at 6. But statements in the specification of the form "[a] MRT is [X]" are either definitional—i.e., the management record type must have characteristic X—or they are not. IV cannot have it both ways. The Court should reject the inclusion of "grouping." But if the Court is inclined to use this adjective in its construction of "management record type," it should likewise add that management record types are "user-defined," because that adjective is derived from a syntactically identical statement ("[a] MRT is a . . .") in the specification.

### 2. "does not include any redundant data"

*First*, this modification of IV's original proposed construction is not timely. The parties exchanged proposed constructions in January 2015 and fully briefed claim construction by early March. *See* Dkt. 55 (IV Op. Br.); Dkt. 59 (Citi Op. Br.); Dkt. 60 (Citi Resp. Br.); Dkt. 64 (IV Resp. Br.). IV could have argued for the inclusion of this phrase in its earlier briefing, as *all* its evidentiary support comes from the patent's specification. The Court's provisional claim construction order gave the parties an opportunity to make submissions "seeking revision of the construction[s]" provisionally adopted by the Court, Dkt. 77 (Prov. Claim Constr. Order) at 7; IV should not use it to try to ambush Citi with significant new claim construction positions that IV could and should have briefed over three months ago in its opening and responsive briefs on claim construction.

*Second*, including this phrase in the construction of "management record type" would improperly import a feature/limitation of the specification's preferred embodiment into the claim

5

language. A specification may describe a variety of different embodiments of an invention, but it is a bedrock principle of claim construction that courts should not "import a limitation from the specification into the claims." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009). Even IV admits as much. *See* Dkt. 55 (IV Op. Br.) at 16 (citing *Kara Tech.*, 582 F.3d at 1348). The limitation that management record types "not include redundant data" is clearly imported from a preferred embodiment described in the specification. Indeed, all the specification statements that IV cites to support including this phrase appear in a section titled "Detailed Description of the *Preferred Embodiment*."

   ***Third***, IV's construction is not supported by the prosecution history. As support for adding this phrase ("does not include any redundant data") to its original construction of "management record type," IV cites the patent specification's statement that "[t]he present invention interfaces with the underlying XML documents by copying the XML data components into *normalized data* objects referred to as PRTs and organizing the PRTs into recognizable business objects referred to as MRTs." *Id.* at 13-14 (emphasis added) (citing Dkt. 58-2, Ex. B ('081 Patent) at 3:66-4:2). IV thus appears to equate "normalized data" with not having redundant data. But during prosecution of the '081 patent, the applicant amended claim 39 (which issued as claim 1) to remove the limitation whereby "each data object" would be in "*normalized form*":

> 39. (Currently amended) A computer-implemented method of manipulating XML documents, comprising:
>   organizing data components of the XML documents into data objects, ~~each data object comprising relational data in a normalized form~~;

Ex. HHH ('081 Patent File History, Reply Pursuant to 37 C.F.R. § 1.111 (Dec. 14, 2010)) at 2). IV is now attempting to reinsert this abandoned limitation into the claims—using different language that IV appears to think is equivalent—by proposing to add "does not include any redundant data."

6

The Court should not let IV add back a limitation to the claims that it abandoned during prosecution.

## IV.   '574 PATENT

IV's primary complaint regarding the Court's provisional claim constructions of the '574 patent is that they are not identical to those the Court previously rendered in *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, No. 1:13-cv-03777 (S.D.N.Y.) ("*JPMC*")—a wholly separate case against a defendant unrelated to Citi. *See* Dkt. 84 (IV Supp. Br.) at 8-10. IV claims entitlement to the *JPMC* constructions, notwithstanding the different arguments raised in this case, the additional evidence before the Court in this case, and the indisputable absence of any legal basis to bind Citi to the *JPMC* constructions.

IV's argument lacks merit. IV chose to serially sue unrelated defendants in unrelated actions for alleged infringement of the '574 patent. Where that strategy is employed, differences in claim construction are commonplace—a fact identified by Citi more than eight months ago when it sought IV's agreement to stay this case pending resolution of *JPMC*. IV was dismissive of Citi's request and insisted on simultaneously asserting the '574 patent in both cases. IV should not now be heard to complain about the foreseeable result of that decision.

Moreover, the provisional claim constructions about which IV now complains come directly from the '574 patent specification and are predicated on the more developed factual record present in this case as compared to the *JPMC* case. IV provides no convincing reason why the Court should now ignore such disclosure and record. If the Court would prefer congruence in the claim constructions in the *JPMC* case and this action, the most sensible approach would be to update the Court's claim construction in the *JPMC* case, as claim construction orders are interlocutory and can be supplemented any time prior to instructing the jury. *See Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) ("District courts may engage

in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.").

Citi therefore respectfully requests that the Court reject IV's revisions to the Court's provisional constructions for the '574 patent.

### A. "[public key] certificate" (claims 18-31)

| Citi's Original Construction | IV's Original / Current Construction | Court's Provisional Construction |
|---|---|---|
| "specially constructed data structure which is signed by a certification authority and contains a user's public key, the user's identity, and some additional parameters related to the validity of the certificate" | "a certificate that vouches for the trustworthiness of a public key including by indicating that the public key was issued by the issuer who was supposed to have issued it" | "a certificate that vouches for the trustworthiness of a public key. The certificate is a specially constructed data structure which is signed by a certification authority and contains a user's public key, the user's identity, and some additional parameters related to the validity of the certificate" |

IV principally argues that the Court should adopt IV's originally proposed construction for "[public key] certificate," thereby reverting back to the less detailed, and less accurate, construction adopted in the *JPMC* case. Dkt. 84 (IV Supp. Br.) at 8-9. Without citing to any authority, IV articulates four reasons for why this is so. It asserts: (1) claim terms cannot have "two different constructions in two different proceedings," (2) the record is no different in this case than in the *JPMC* case, (3) the Court's provisional constructions improperly depend on "infringement and validity arguments," as well as "the accused products and devices," in this case, and (4) the Court's provisional construction adds excessive "verbiage" to what was otherwise a "straightforward" construction. *Id.* at 8-9. Each of IV's arguments is incorrect.

*First*, the allegedly conflicting claim constructions to which IV objects are precipitated by its own doing. By asserting the '574 patent against eight defendants over the course of thirteen months, IV knowingly risked that inconsistent decisions would be rendered on that patent. *Cf.*

8

*Aventis Pharma Deutschland GmbH v. Lupin Ltd.*, 403 F. Supp. 2d 484, 491 (E.D. Va. 2005) ("[I]f duplicative litigation and inconsistency are Plaintiffs' genuine concern, they can only blame themselves. . . . Plaintiffs, and no one else, filed two identical lawsuits in two different forums."); *Adrain v. Genetec Inc.*, 2009 WL 3063414, at *3 (E.D. Tex. Sept. 22, 2009) ("[T]he existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication."). IV, as the patent holder, properly bears that risk, as it had a full and fair opportunity to litigate the claim constructions of its patents. By contrast, Citi, as a named defendant only in this case, had no such opportunity. Thus, despite IV's implication otherwise, a construction rendered in any other case, including the *JPMC* case, is not binding on Citi. *See* Dkt. 59 (Citi Op. Br.) at 5 (citing *In re Tex. Holdings Corp.*, 498 F.3d 1290, 1297 (Fed. Cir. 2007); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1322 (Fed. Cir. 1999)); Dkt. 60 (Citi Resp. Br.) at 14 n.4.

Significantly, Citi tried to avoid the risk of inconsistent claim construction rulings in co-pending cases when it filed a motion to stay early in this case, noting that it would be inadvisable "to press forward with this action as though the [*JPMC* case] do[es] not exist." *See* Dkt. 48 (Citi. Rep. Mot. Stay) at 7-8. Yet IV adamantly opposed the requested stay and argued that it had the right to "simultaneously litigate the same patent against multiple defendants." Dkt. 46 (IV Opp. Mot to Stay) at 11. IV cannot now be heard to complain about the predictable consequences of its litigation strategy in this, and other, cases.

At any rate, IV is incorrect to imply that claim terms cannot have different meanings in different cases as a matter of law. Indeed, different panels of the Federal Circuit have construed the same claim terms in the same patent differently in cases involving different defendants. *Compare, e.g.*, *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 92 F.3d 1203 (Table)

9

(Fed. Cir. 1996) (affirming determination that "greater than 3% elasticity" did not require "complete recovery after a strain of greater than 3%"), *with CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1158 (Fed. Cir. 1997) (construing "greater than 3% elasticity" in same claim of same patent as requiring complete recovery after being subjected to stress).

***Second***, contrary to IV's bald assertion, the record **has** changed since the Court's constructions in the *JPMC* case. As noted in Citi's opening and responsive briefs, IV made representations in pending *inter partes* review proceedings that are inconsistent with the Court's constructions in the *JPMC* case. Dkt. 59 (Citi Op. Br.) at 17, 22 (citing to IV's *inter partes* review filings in which it admitted that the structural nature of the public key certificate is important). Those representations constitute intrinsic evidence—which IV acknowledges the Court should consider, Dkt. 84 (IV Supp. Br.) at 8—for purposes of claim construction. Similarly, IV has since proposed constructions in other district court cases that are inconsistent with the constructions that it now proposes here. Dkt. 59 (Citi Op. Br.) at 22 (citing IV's construction in another case that refers to "public key certificate" as a "data structure"). Finally, Citi has made arguments in this case that were not made in the *JPMC* case, which also forms a basis for reconsidering the *JPMC* constructions. *See Sears Petrol. & Transport Corp. v. Archer Daniels Midland Co.*, 2007 WL 2156251, at *12 (N.D.N.Y. July 24, 2007) (holding that "new arguments not raised in the prior relevant proceeding" were sufficient to reconsider earlier claim construction ruling); *TQP Dev., LLC v. Intuit Inc.*, 2014 WL 2810016, at *6 (E.D. Tex. June 20, 2014) (Bryson, J., sitting by designation) ("[T]he previous claim construction orders provide an important starting point, but the prior orders in related cases do not bar the Court from conducting additional construction in order to refine earlier claim constructions.").

***Third***, IV's bald assertion that the Court's provisional constructions in this case improperly depend on "infringement and validity arguments," as well as "the accused products and devices," is false.[2] Dkt. 84 (IV Supp. Br.) at 8-9. At no point in its briefing or at the *Markman* hearing did Citi reference prior art or accused products, much less imply that the such extrinsic evidence would be relevant to claim construction. Further, the Court's provisional claim construction order makes no such reference. Thus, IV's attempt to fabricate legal error in the Court's provisional constructions must fail.[3]

***Fourth***, IV's argument that the Court's provisional construction adds excessive "verbiage" to what was otherwise a "straightforward" construction is incorrect. As discussed in Citi's original briefing, the '574 patent expressly defines "public key certificate" to be a "specially constructed data structure." *See* Dkt. 59 (Citi Op. Br.) at 21 (citing Dkt. 57-13, Ex. L ('574 Patent) at 10:37-39). Indeed, the Court correctly noted that Citi's construction "comes right out of the specification[]." Dkt. 83-2, Ex. EEE (2015-03-26 Claim Constr. Hr'g Tr.) at 39:23-24; *see also id.* 40:25-41:2. The structural nature of the certificate is important and was missing from the *JPMC* construction. Thus, the "straightforward" construction in *JPMC* would have inevitably spawned a

---

[2] In fact, the infringement allegations set forth in IV's complaint are vague, leaving Citi without a clear understanding of which products are alleged to infringe. *See* Dkt. 1 (Compl.) ¶ 50 (accusing "systems and services that comply with the PCI Data Security Standard for encrypting data during communication sessions, including, but not limited to, [Citi's] website").

[3] Nevertheless, IV's characterization of the law is incorrect. Although the Court did not do so here, courts may consider accused products during claim construction to provide context. *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1383 (Fed. Cir. 2011) ("It is not inappropriate for a court to consider the accused devices when construing claim terms, for the purpose of 'claim construction' is to resolve issues of infringement."); *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326-27 (Fed. Cir. 2006) ("Knowledge of [the accused] product or process provides meaningful context for the first step of the infringement analysis, claim construction."). Similarly, "[e]ven when prior art is not cited in the written description or the prosecution history, it may assist in ascertaining the meaning of a term to a person skilled in the art." *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1044-45 (Fed. Cir. 2000).

dispute as to what type of structure qualifies as a "certificate." The "verbiage" to which IV now objects is a critical feature of the certificate as expressly defined by the patent. That feature properly appears in the Court's provisional construction.

B.   **"certifying and returning the data structure" (claim 18)**

| Citi's Original Construction | IV's Original Construction | Court's Provisional Construction | IV's New Construction |
|---|---|---|---|
| "vouching for the identity of the public key owner by signing the data structure and returning it to the owner/requestor" | "signing the certificate and returning it to the requester" | "vouching for the identity of the **public key owner** by signing the certificate and returning it to the **owner/requestor**" | "vouching for the identity of the public key owner **or requestor** by signing the certificate and returning it to the owner **or** requestor" |

IV once again argues that the Court should revert back to its *JPMC* construction for "certifying and returning the data structure." For the reasons discussed above, that argument fails. As a fallback position, however, IV argues that the Court should broaden its construction to indicate that the certificate may be used to vouch for the identity of a "public key owner *or* requestor." Dkt. 84 (IV Supp. Br.) at 10. This argument also fails, as it directly conflicts with the '574 patent claims and specification.

Claim 18 of the '574 patent—the only claim in which this term appears—recites a method by which a user requests from a certification authority a signed certificate that vouches for the integrity of the user's *own* public key. *See* Dkt. 57-13, Ex. L ('574 Patent) at claim 18; Dkt. 59 (Citi Op. Br.) at 16-20. With the signed certificate in hand, the user can then engage in secure communications with other users of the system, as recited in other claims of the patent. *See, e.g.*, Dkt. 57-13, Ex. L ('574 Patent) at claim 23, Fig. 4. Claim 18 and the specification make clear, however, that the entity that requests and receives the certificate is the public key owner itself. *See id.* claim 18, 10:37-39 ("A certificate is specially constructed data structure which contains the ***user's public*** key." (emphasis added)), 10:45-46 ("The Certification Authority vouches for the

12

identity of ***the public key owner***[] . . . ." (emphasis added)), 11:16-18 (requiring that the data structure sent to the certification authority contain the requestor's public key). The term "owner/requestor" appearing in the Court's provisional construction appropriately recognizes that the requestor and the public key owner are the same entity.

But by proposing that the Court replace "owner/requestor" with "owner *or* requestor," IV asks that the Court ignore the express disclosure in the patent. IV's modified construction is incorrect, as it implies that the certificate can be requested by, and returned to, ***either*** the public key owner ***or*** a third-party requestor. *See* Dkt. 84 (IV Supp. Br.) at 9. As explained above, claim 18 covers only the first embodiment, not the latter—it does not recite a method whereby a third-party requestor is issued a certificate authenticating ***another user's*** public key. IV's revision therefore improperly broadens the scope of the claim and should be rejected.

## V.   CONCLUSION

Citi respectfully requests that the Court reject IV's revisions to the Court's provisional constructions as set forth above.

Dated: June 19, 2015          Respectfully submitted,

WILMER CUTLER PICKERING HALE & DORR LLP

*/s/ Gregory H. Lantier*
Gregory H. Lantier
Richard A. Crudo
1875 Pennsylvania Ave, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
gregory.lantier@wilmerhale.com
richard.crudo@wilmerhale.com

Monica Grewal
60 State Street
Boston, MA 02109
Telephone: (617) 526-6223
Facsimile: (617) 526-5000
monica.grewal@wilmerhale.com

Robert W. Trenchard
Omar A. Khan
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
robert.trenchard@wilmerhale.com
omar.khan@wilmerhale.com

KIRKLAND & ELLIS LLP

Kenneth R. Adamo
601 Lexington Avenue
New York, NY 10022-4611
Telephone: (212) 446-4839
Facsimile: (212) 446-4900
kenneth.adamo@kirkland.com

Brent P. Ray
David W. Higer
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2608
Facsimile: (312) 862-2200

14

brent.ray@kirkland.com
dhiger@kirkland.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that I caused a true and correct copy of the foregoing Defendants' Responsive Supplemental Claim Construction Brief to be served via the CM/ECF system of the U.S. District Court for the Southern District of New York on all counsel of record.

This 19th day of June 2015.

*/s/ Gregory H. Lantier*