# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

INTELLECTUAL VENTURES I LLC, and
INTELLECTUAL VENTURES II LLC,                   :

                Plaintiffs,                   :

              v.                   :         1:14-cv-04638-AKH

CITIGROUP, INC., CITICORP,                   :
CITIBANK, N.A.,

                         :

              Defendants.                   :

                         :

-----------------------------------------------------------------x

## INTELLECTUAL VENTURES' RESPONSE TO DEFENDANTS' SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF (DKT. NO. 82)

**TABLE OF CONTENTS**

I.   U.S. PATENT NO. 6,819,271 ................................................................................................. 1
   A.   "parallel data compression algorithm" ................................................................. 1
   B.   "parallel data decompression algorithm"............................................................. 3
   A.   "primary record type" ......................................................................................... 10

III.   U.S. PATENT NO. 7,634,666 ............................................................................................ 12
   A.   "multiplication unit," "addition unit," and "sign inversion unit" ..................... 12
   B.   "host processor"................................................................................................. 13

IV.   U.S. PATENT NO. 6,546,002 ............................................................................................ 14
   A.   The Court's Summary ........................................................................................ 14
   B.   "mobile interface"............................................................................................. 14

V.   U.S. PATENT NO. 5,745,574 ............................................................................................. 17
   A.   "certifying and returning the data structure" ................................................... 17
   B.   "revocation list"................................................................................................ 18
   C.   "common point of trust"................................................................................... 18
   D.   "point of trust in common with"....................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
  438 F.3d 1374 (Fed. Cir. 2006) ................................................................................. 3

*Home Diagnostics, Inc. v. LifeScan, Inc.*,
  381 F.3d 1352 (Fed. Cir. 2004) ................................................................................. 9

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
  381 F.3d 1111 (Fed. Cir. 2004) ................................................................................. 9

*Intellectual Ventures II LLC v. JP Morgan Chase & Co.*,
  Case No. 1:13-cv-03777-AKH ................................................................................. 19

*Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*,
  445 F.3d 1348 (Fed. Cir. 2006) ................................................................................. 16

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) ............................................................................. 3, 8

*MBO Labs., Inc. v. Becton, Dickinson & Co.*, 4
  74 F.3d 1323 (Fed. Cir. 2007) ................................................................................. 16

*O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
  521 F.3d 1351 (Fed. Cir. 2008) ................................................................................. 19

*Oatey Co. v. IPS Corp.*,
  514 F.3d 1271 (Fed. Cir. 2008) ................................................................................. 16

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ............................................................................. 6, 7

*Seachange Int'l, Inc. v. C-COR Inc.*,
  413 F.3d 1361 (Fed. Cir. 2005) ................................................................................. 8

*Vanderlande Industries Nederland BV v. Int'l Trade Comm'n*,
  366 F.3d 1311 (Fed. Cir. 2004) ................................................................................. 16

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) ................................................................................. 2

Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "IV") makes the following submission in response to the Defendants' Supplemental Claim Construction Brief (Dkt. No. 82).

## I.    U.S. PATENT NO. 6,819,271

### A.    "parallel data compression algorithm"

| IV's Construction | Citi's Prior Construction | Citi's New Construction | Court's Construction |
|---|---|---|---|
| An algorithm in a parallel compression engine that compresses more than one data unit at a time | An algorithm that compresses data across multiple processing units at the same time | An algorithm implemented by a parallel compression engine to compress more than **one symbol** of uncompressed data at a time | An algorithm implemented by a parallel compression engine to compress more than **one unit, or stream,** of uncompressed data at a time |

Citi continues to advocate that the claims do not operate on a "unit" of uncompressed data. That is despite the specification saying otherwise: "Uncompressed data 230A may be a unit of data (such as a page of memory or a file) or a stream of data." '271 patent, 8:29-31. The Court heard Citi's argument during claim construction and rejected it. Ex. BB, Hearing Tr., 8:8-9:9. Citi's repeated argument fails for the same reason it did before: it ignores the express language of the specification, excludes embodiments, and fails to account for dependent claims that specifically require the uncompressed data to be "symbols."

First, as IV discussed at the hearing and as Citi quotes in its brief, the specification says that "uncompressed data" may be a "unit of data or a stream of data." The idea is that the data may either be worked on in discrete units or as a constant stream of data. The Court's construction accurately captures that concept. Citi wants the Court to ignore this definition, however, because it argues that the specification is discussing data "before a parallel compression algorithm operates on [it]." D.I. 82 at 5. This makes no sense because the data in

question is precisely what the algorithm will operate upon.  The overall character of data does not change from a "data unit" or "stream of data" simply because it is being compressed.  To borrow the Court's analogy, a set of wires in parallel or in series runs electricity—the general nature of the current does not change, it is still electricity.  Thus, Citi's distinction is one without a difference meaningful to the nature of the claims.[1]

The fact that the data compression logic does in fact operate on units or streams of data, consistent with the Court's construction, finds ample support in the specification:

> In some cases, the entire uncompressed data **230**A (whether a unit or a stream) may not be compressed in one pass using the data compression logic. In one embodiment, parts of the uncompressed data may be compressed by the data compression logic in a pipelined fashion. In other words, the data compression logic may receive a first part of uncompressed data **230**A, break the first part into a first plurality of portions, and compress the first plurality of portions and output a compressed first part. While the compression of the first part is being performed, a second part of the uncompressed data may be received. This process may continue until the entire uncompressed data **230**A is compressed.

'271 patent, 9:24-36.

Second, as IV explained at the hearing there are a number of different embodiments. Some embodiments operate on symbols, some operate on characters and some operate on data that could be bytes or several bytes in length.  *See, e.g., id. at* 5:1-3.  To limit the patent to "symbols" would exclude these embodiments.  *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1584 (Fed. Cir. 1996) (holding that a claim construction that excludes a preferred

---

[1] The Court's construction does not allow the claim to read on compression being done in series, as Citi argues.  The claim is explicit that the compression must be done in parallel—indeed the word "***parallel***" is included in both terms that Citi takes issue with.  Moreover, for "compression" the Court's construction explicitly requires processing "***more than one***" data unit at a time, which expressly excludes the prior art serial compression algorithms described by the specification as "operat[ing] in a serial manner on ***only one*** symbol at a time."  *Id.* at 22:15-16 (emphasis added).  Of course, contrary to Citi's assertion, IV has never contended that the claims read on processes being done only in series – quite the contrary.  In any case, this argument was already advanced by Citi in its opening claim construction brief.  Dkt. No. 59 at 53.

embodiment "is rarely, if ever, correct.")  Citi's proposal would also likely require additional construction to define what the patent means by "symbol" although it appears that Citi concedes it is just another word for "data unit."  D.I. 82 at 4-5.  Tellingly, Citi's original construction for "parallel compression algorithm" simply recited "data," making it clear that Citi itself never believed that this claim term is limited to "symbols."

Third, there are certain dependent claims that limit "uncompressed data" to "symbols," which means that the independent claims cannot be so limited.  For example, claim 8 states that "the uncompressed data comprises a plurality of symbols."  Citi's construction renders this and other dependent claims a nullity.  The doctrine of claim differentiation strictly prohibits such a result.  *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380-81 (Fed. Cir. 2006).  Citi cannot import a limitation from a dependent claim into an independent claim because it makes that dependent claim meaningless.  *Id.*; *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004).

Thus, Citi's proposal is deficient and should not be adopted.

## B.  "parallel data decompression algorithm"

| IV's Construction | Citi's Prior Construction | Citi's New Construction | Court's Construction |
| --- | --- | --- | --- |
| An algorithm in a parallel decompression engine that decompresses one or more data units at a time | An algorithm that compresses data across multiple processing units at the same time except in a last decompression cycle | An algorithm implemented by a parallel decompression engine to decompress **more than one token** of compressed data at a time | An algorithm implemented by a parallel decompression engine to decompress **one or more units** of compressed data at a time |

Citi's new construction suffers from two fatal flaws and must be rejected in favor of the Court's construction.  Citi's suggested change for "parallel data decompression algorithm" suffers from the same problems as "compression algorithm" because it tries to limit the

decompression algorithm to one embodiment—one that uses a token.  But it also suffers from a

far more significant issue, because once again Citi re-argues the position that it argued and lost

already—that the decompression algorithm has to operate on "more than one" piece of data "at a

time."  This same argument was central to Citi's original construction, which required

compression by "multiple processing units at the same time."  Citi has changed the words, but

the two constructions mean the same thing, and this Court has already heard and rejected Citi's

position.  In effect, Citi uses its argument to limit the claim to "tokens" as a guise to reargue its

losing position that the decompression algorithm must decompress multiple pieces of data

simultaneously.  The Court properly rejected this argument the first time and should do so again,

both because it is old argument that the Court expressly told the parties not to re-raise and

because that construction is contrary to the intrinsic evidence.

   Citi argues that it is simply trying to make the constructions "consistent," but this is just

another turn of phrase to cover up for the rehashing of its old arguments that parallel

compression and decompression algorithms operate on more than one piece of data at a time.  As

IV demonstrated in its briefing and at the hearing, the *de*compression algorithm is ***not*** simply the

"reverse" of compression.  There are significant differences between the two disclosed

throughout the '271 specification, which consistently indicates that the parallel *de*compression

algorithm operates on *one* or more data units at a time, while the compression algorithm operates

on more than one data unit.  (This fact is properly captured by the Court's constructions.)  These

critical operational differences were even recognized by Citi's original construction for

"decompression algorithm," which allowed for *one* or more data units to be decompressed at

least "in a last decompression cycle" but did not make such an allowance for the compression

algorithm.  Now Citi sacrifices its previous acknowledgement of undeniable differences between

parallel compression and decompression algorithms on the newly discovered altar of "consistency."

While the specification indicates that **compression** is done on more than one data units at a time (as is reflected in the Court' construction for compression), there is no similar statement for decompression.  In fact, the specification **always** teaches that parallel data decompression algorithm can operate on **one** or more data units at a time within a given parallel decompression engine.  '271 patent, 37:4-7.

Accordingly, Citi's proposal would impermissibly **exclude** virtually **every** embodiment of a parallel decompression algorithm and engine.  *Vitronics*, 90 F.3d at 584 (holding that a claim construction that excludes a preferred embodiment "is rarely, if ever, correct").  Here are just some examples of preferred embodiments that would be excluded by Citi's construction (other examples are discussed at length in IV's *Markman* briefing papers):

| Citi's New Construction: | Excluded Preferred Embodiments Under Citi's Construction: |
|---|---|
| ". . . **more than one** token of compressed data at a time" | "The **1** to N original output bytes are passed from stage one to the combined history window 1014." '271 patent, 33:62-64 (emphasis added). |
| ". . . **more than one** token of compressed data at a time" | "In one embodiment, **one** token is assigned to one decoder, and one decoder may process **one** token in a decompression cycle." *Id.* at 33:45-47 (emphasis added). |
| ". . . **more than one** token of compressed data at a time" | "FIG. 23b illustrates an embodiment of a parallel decompression method performed in one embodiment of the parallel decompression engine 550 of FIG. 23a. FIG. 23b illustrates that compressed data may be decompressed in a series of cycles, with **one** or more tokens from the compressed data examined and decompressed in parallel in each cycle." *Id.* at 35:62-36:1 (emphasis added). |
| ". . . **more than one** token of compressed data at a time" | "FIG. 23c expands on block 906 of FIG. 23b, illustrating one embodiment of a method for examining a plurality of tokens from the |

|  | compressed data 900 in parallel. In block 908, **_one_** or more tokens to be decompressed in parallel in the current decompression cycle may be extracted from the compressed data 900." *Id.* at 36:57-62 (emphasis added). |
| --- | --- |

Citi cites to portions of the specification that discuss multiple units of data being decompressed. These are the same citations that it previously relied on. As IV showed before, the specification repeatedly states only that the data units "**_may_**" be examined more than one at a time, not that they "must" be, or always are. This is true for every citation provided by Citi that actually relates to decompression engines. Of course, time and time again Citi confuses the issue by criticizing the Court's *de*compression construction by referencing the Court's comments regarding compression, and further referencing the specification's teachings regarding compression and not *de*compression. Citi also once again cites to the pipelined multi-stage embodiment disclosed at col. 25:44-26:55. This is another old argument repackaged by Citi. As IV pointed out, the pipelined embodiment (identified as such at col. 26:13-14) is specifically claimed by dependent claim 74, which adds the concurrency requirement. This supports the Court's construction because it shows that the broader independent claims cannot be limited to more-than-one-at-a-time (concurrent) decompression.[2] It also again shows that Citi is trying to read one embodiment of a parallel decompression algorithm – the pipelined multi-staged embodiment – from the specification into the claims. *Phillips*, 415 F.3d at 1320 ("[O]ne of the

---

[2] Indeed, even in the pipelined, multi-stage embodiment cited by Citi, the specification cautions that "some operations in some stages may have dependencies that may utilize sequential processing" and teaches that "[t]he plurality of tokens may actually be extracted from the input data section serially or consecutively." *Id.* at 26:64-66, 27:28-30. Accordingly, even in this embodiment the algorithm in a given decoder may operate on a single data unit at a time depending on the data and the implementation. This is in accord with the Court's construction, but is *excluded* under Citi's new construction just as it was excluded under its old construction that the Court rejected.

cardinal sins of patent law [is] reading a limitation from the written description into the claims.")
(internal citation omitted).

The '271 patent claims contradict Citi's construction as well.  When the patentees wanted
to specify multiple operations being done at the same time, in the claims they used the term
"concurrently" to do so.  The independent claims directed to decompression (*e.g.*, claim 65) do
*not* use the term "concurrently."  *See, e.g.*, Ex. A, '271 patent, 49:20-35.  Certain dependent
claims, such as claim 73, add the "concurrently" requirement.  *Id.* at 50:19-21.  This indicates
that, contrary to the central argument advanced by Citi, the phrase "parallel data decompression"
is not limited to concurrent (at a time) operation with multiple pieces of data – otherwise the
dependent claims' recitation of each parallel data decompression engine operating on its units of
data concurrently would be superfluous.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir.
2005).

Contrary to Citi's unfounded criticism, the Court's construction does not broaden the
scope to allow for serial operations.  The claims require the parallel data decompression
algorithm to operate in *parallel* decompression engines, where the claims also require that it
operate on *only a portion of the data*, unlike the serial prior art.  Moreover, even without
reference to the surrounding claim language, the Court's construction also requires the parallel
data decompression algorithm to operate in a "*parallel* decompression engine," unlike the *serial*
prior art.

The second change proposed by Citi —changing "data" to "tokens"—is improper for
several reasons.  First, it limits the independent claims (which do not recite "tokens") to an
embodiment ("tokens") claimed only in certain dependent claims.  This is the same issue as
Citi's proposed change for "parallel data compression algorithms."  Indeed, in certain

embodiments the patent treats "token" as the decompression analog to "symbol." So when the compression algorithm operates on "symbols" the decompression algorithm may in turn operate on "tokens"—which then serve as the compressed representation of the data in the corresponding symbols. Just as there are certain dependent claims reciting "uncompressed data comprises symbols" regarding compression, other dependent claims (*e.g.*, dependent claim 72) are limited to "compressed data comprises tokens each describing one or more of the symbols in the uncompressed data" when regarding *de*compression. Citi's proposed language, therefore, violates the doctrine of claim differentiation. *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1368-1369 (Fed. Cir. 2005). The doctrine of claim differentiation is at its strongest "where the limitation that is sought to be 'read into' an independent claim *already appears* in a dependent claim." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) (emphasis added).

Second, Citi's proposal to limit the construction of "decompression algorithm" to one embodiment is also incorrect because it ignores the other described embodiments. Indeed, Citi never asserted that data was limited to "token." Tellingly, its previous construction simply recited "data." This shows that even Citi recognizes that it is improper to read in the "token" limitation that it now belatedly proposes. As discussed at the hearing, and above for "compression algorithm," the patent describes operations on a number of different types of data, not just symbols or tokens. While a token of compressed data may describe one or more characters or "symbols" of uncompressed data, meaning that when it is fed through a decompression cycle it is converted back into the corresponding uncompressed symbols, that is not the only embodiment taught. '271 patent, 41:5-7. In fact, as IV has already shown, regardless of whether compression or decompression is at issue, the '271 patent teaches that

there is a unit of data that the algorithm operates upon, but that it may be a page, a byte, a symbol, a token, a character, or some other unit of data depending on the implementation.  *See e.g., id.* at 33:51; 39:61-65.  Once again, Citi's proposal would impermissibly *exclude* embodiments that are not limited to tokens.  For example, the following embodiment would be excluded because it may operate on data bytes, and not just tokens:  "The 1 to N original ***output bytes*** are passed from stage one to the combined history window 1014."  *Id.* at 33:62-64 (emphasis added).  Also excluded would be embodiments that are described to operate on units or streams of data and not tokens.  *See, e.g., id., at* 10:62-66.

Of course, even *if* the specification *only* disclosed decompression algorithms operating on tokens (not true, as shown above), Citi would be wrong to read the preferred embodiment into the claims.  *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004) ("[P]articular embodiments appearing in the written description will not be used to limit claim language that has broader effect . . . .  And, even where a patent describes only a single embodiment, claims will not be 'read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.'").  Citi has not pointed to any "words or expressions of manifest exclusion" in the specification – because there are none.  Accordingly, the '271 patent is entitled to its full claim scope, as reflected in the Court's construction.  *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004) ("Absent a clear disavowal in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language.").

Thus, Citi's proposal is wrong because it ignores the claim language and violates the doctrine of claim differentiation by rendering dependent claims a nullity, it excludes disclosed embodiments in the specification, and it creates confusion.  Moreover, the argument that

decompression operates on "more than one" data unit is an improper renewing of Citi's original arguments.  The Court's construction is consistent with the intrinsic record and should not be disturbed.

## II.    U.S. PATENT NO. 7,984,081

### A.  "primary record type"

| IV's Construction | Citi's Prior Construction | Citi's New Construction | Court's Construction |
|---|---|---|---|
| A data type that defines a data structure to contain data extracted from XML documents | A data type that defines a data structure | A type of information, as a subset of a more general category of information, to be extracted from business documents and arranged for a user | A unit of information, as a subset of a more general category of information, extracted from business documents and arranged for a user |

IV agrees that the Court's construction should be amended but it should be done so in accord with IV's construction for the reason set forth in IV recent supplemental submission. Dkt. No. 84 at 3-5.

Citi's first proposed revision is to replace the "unit" in the Court's construction with the word "type."  IV's issue with this substitution is that it makes this part of the construction a nullity.  Indeed, *all* information is a "type of information."  Thus, the revision does not go far enough to explain what the PRT actually is.  If the first part of the Court's construction should be amended (but not in accord with IV's construction), it should read "a data type, which is a subset of a more general category of data . . .."[3]  This is consistent with the parties' proposed constructions but more importantly the specification, which sets forth and distinguishes between "three major data types:  primary record types (PRTs), management record types (MRT), and

---

[3] IV objects to the "a subset of a more general category of" language in the Court's construction, but accepts it here for purposes of discussing Citi's proposed revisions only.  *See* Dkt. No. 84 at 3-5.

dynamic documents (DD)." '081 patent, 2:4-7, 3:66-4:2, 4:20-23, 4:35-42; Ex. F, Kelly Decl., ¶¶ 13-16.  Defining the PRTs as a "type of information" could conflate the PRTs, MRTs and DDs and ignore that that the patent specifically defined what PRTs are – "a data type that defines a data structure to contain data extracted from XML documents." *Id.*  The invention only pertains to electronic information so the PRT has to be a data type that defines a specific data structure and not any "type of information" as Citi's proposed revision would allow.  '081 patent, 1:52-58, 3:19-25, 3:66-4:2.

While the word "type" is appropriate in the construction of primary record type, Citi's proposal that would read "type of information" does not go far enough as explained by IV in its supplemental claim construction submission.  Dkt. No. 84 at 3-5.  More troubling is that Citi's rationale for the substitution of this word (with nothing more) is entirely wrong.  Citi's argument that "a 'data type,' [is] not to be confused with an 'instance,'" is an artificial distinction that Citi maintains to prospectively advocate its invalidity defense based on indefiniteness that Citi briefed in its claim construction submissions.  Dkt. No. 59 at 62.  Citi's position here is not supported by evidence and amounts to naked attorney argument.  Indeed, Citi's offers no testimony from an expert declarant to support its position.  And, contrary to Citi's argument, the specification of the '081 patent uses the terms primary record type, PRT, MRT, instances of PRTs, and PRIs to indicate a data type that contains data extracted from XML documents.  '081 patent, Figure 1, Figure 6, 2:4-12, 3:19-25; *see also* Dkt. No. 64 at 20-21.  Each of these phrases can mean the same thing to a person of ordinary skill in the art who is aware of the context in which each of these phrases is used.  Dkt. No. 64 at 20-21; Ex. S, Kelly Rebuttal Decl., ¶ 4.  Thus, the underlying rational for Citi's substitution of the word "type" (which is entirely unsupported) fails and should be rejected.

Citi's second proposed revision – the words "to be" before the word "extracted" – is wrong and contradicted by the specification.  Indeed, a "PRT is where the invention stores the data *extracted from* XML documents."  '081 patent, 4:20-22; Ex. F, Kelly Decl., ¶¶ 14-16.  It is not, as Citi argues, something that is "to be" (*i.e.*, in the future) extracted.   The specification directly contradicts Citi with respect to this point because the PRT is disclosed as a data structure that contains data extracted from XML documents.  Ex. F, Kelly Decl., ¶¶ 14-16.  Accordingly, the words "to be" should not be added because they are not supported by (and in fact contradicted by) the specification.

## III.   U.S. PATENT NO. 7,634,666

### A.  "multiplication unit," "addition unit," and "sign inversion unit"

| Term | IV and Court's Construction | Citi's Construction |
|------|------------------------------|----------------------|
| Multiplication unit | A unit that performs multiplication | A unit that <u>solely</u> performs multiplication |
| Addition unit | A unit that performs addition | A unit that <u>solely</u> performs addition |
| Sign inversion unit | A unit that changes positive numbers to negative numbers and negative numbers to positive numbers | A unit that <u>solely</u> changes positive numbers to negative numbers and negative numbers to positive numbers |

Citi, JPMC and IBM have all made the same incorrect argument that there should be a "solely" limitation injected into the construction of these three terms.   This Court has twice rejected that argument and so has the Patent Trial and Appeal Board.  *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, Case No. 1:13-cv-03777-AKH, Dkt.. No. 64 at 6 and Dkt. No. 82 at 12; Ex. T at 9-11.  These three terms are simply not limited to units that "solely" perform multiplication, addition and sign inversion, respectively.  *Id.*

Citi's argument here is simply re-argument of an issue that has already been decided in IV's favor and briefed by the parties here, in the JPMC matter, and before the Patent Trial and

Appeal Board.  Dkt. No. 82 at 12 ("As set forth in Citi's opening claim construction brief . . .").

Contrary to Citi's assertion, there was no disclaimer or any statement by the patentees that

mandates the "solely" limitation that Citi (and JPMC and IBM) have sought to improperly

import into the claims.  *See* Dkt. No. 64, Intellectual Ventures' Responsive Brief On Claim

Construction at 22-24 and 25-26; Ex. T at 9-11.  The patentees simply did not make any

statement or amendment after the examiner cited the Stojancic reference that requires the

addition of a "solely" limitation.  *Id.*  Indeed, the Patent Trial and Appeal Board expressly found

that "[r]egarding the prosecution history, we are not persuaded that the prosecution history

statement constitutes a clear and unmistakable disavowal of claim scope."  Ex. T at 10-11.

The Court has twice ruled that the word "solely" should not be read into these three claim

terms and that ruling should not be disturbed.

### B.  "host processor"

| IV's Construction | Citi's Prior Construction | Citi's New Construction | Court's Construction |
|---|---|---|---|
| A central processing unit that runs the computer system | The processor that drives the cryptographic coprocessor | A processor that delivers signals or information to the cryptographic coprocessor for accelerated encryption or decryption | A processor, such as a network or personal computer, that delivers signals or information to the cryptographic coprocessor for accelerated encryption or decryption |

Contrary to Citi's assertion, the Court's construction does not "introduce[] unnecessary

exemplary language . . . that would confuse the jury."  Dkt. No. 82 at 13.  To the contrary, the

examples in the Court's construction are found (verbatim) in the specification.  '666 patent, 2:64-

3:2.  Moreover, these examples were specifically discussed at the *Markman* hearing.  Ex. BB,

March 26, 2015 Transcript at 26:23-27:23.  Citi's fear that a host processor would include a

"monitor" or "keyboard" is conclusory and unfounded.  Indeed, the remainder of the construction explains what the host processor does.

To the extent any modification of the term "host processor" is made the word "accelerated" should be removed.  This is not a term that appears in the specification or any of the evidence cited by either party.  Thus, this portion of the Court's construction is not supported.

## IV.   U.S. PATENT NO. 6,546,002

### A.  The Court's Summary

The Court's summary adequately accounts for the mobile interface.  Citi has already argued at length that "mobile interface" is something different than "mobile interface agent" in contrast to the overwhelming intrinsic evidence that they are synonymous. This was addressed in the parties' original briefing and IV showed how the specification treats the two terms similarly and how one of skill in the art would understand them to be the same.  If anything, a "mobile interface agent" is simply an embodiment of the "mobile interface."  Thus, the Court's summary is correct.  It uses the language of the claims itself to correctly capture the scope of the invention.

### B.  "mobile interface"

| IV's Construction | Citi's Prior Construction | Citi's New Construction | Court's Construction |
|---|---|---|---|
| A user interface accessible on different computing devices and capable of dynamically accessing user specific data stored on a network server and local device | Indefinite<br><br>Alternative:  Plain meaning – i.e., an interface operable to move from one local device to another | A **user** interface, accessible on various **types of** computing devices, allowing a user to access files and other data from various **types of** computing devices | An interface, accessible on various computing devices, allowing a user to access files and other data from various computing devices |

Citi proposes two modifications to the Court's construction: (1) changing "interface" to

"user interface" and (2) limiting the claims to instances of "various **types of** computing devices." Although IV believes the Court's construction does not need clarification, IV has no objection to the first modification changing "interface" to "user interface."

Citi's second modification improperly restricts the scope of the claim. The invention is directed to a mobile interface that can operate across multiple devices. Examples are given that those multiple devices can include different types of devices, such as a desktop computer or a laptop or a smart phone. Nothing in the claims, however, requires that the term "mobile interface" be used and installed on ***different types*** of devices. One can practice the invention by using the mobile interface on "various computing devices" even if those devices are two laptop computers or two smart phones. Rather, the claims are directed to using the mobile interface to access data "stored on a network server" and a "local device." This is what the claim language already requires. A user may have their data stored on a Windows PC at work and want to access it from another Windows PC at home or their data may be stored on a server and they want to access it from a smart phone. The claims do not limit the invention to one instance.

Indeed, the intrinsic evidence recognizes that the invention is about having access to programs and information not on a "per computer" basis but generally from "any device." Citi itself cites to the specification that it "is not uncommon for many users to have multiple computers…." D.I. 58 at 16 (quoting '002 patent at 1:62-65). The users may have additional devices, but the invention is meant to work across "multiple computers" just as it is across multiple "PDAs, and other computer-related devices." Thus, when the Abstract, Field of Invention, Summary of the Invention, and Preferred Embodiment all discuss accessing programs and files from "any computing device" they do not mean "as long as that computing device is a different type of computing device." Abstract (invention is a mobile interface that can access

15

user resources "from any computer"); 1:10-15 ("The present invention is further directed to a mobile interface agent that can be used to dynamically access resources stored either locally in the computer device or across a network…via *any computer device*"); 3:52-56 ("The present invention provides a system and method for implementing such a licensing model so that the user can access and run programs from any computer…."); 4:50-57.[4]

The specification also discusses how if software is licensed on a "per device" but may want to access the program from other devices, even ones that are the same device.

> Most software programs and applications are currently licensed on either a node locked paradigm in which the software is usable on a per device…Thus, most users cannot install the same software program on both their home and work computers unless the user purchases two identical programs (one for home and one for work).

*Id.* at 3:23-34.  Thus, per the explicit example given, if a user has a license to use Microsoft Word, but it is stored on their work computer they can access it using the mobile interface from their home computer.  Thus, the user is using the same type of device but still practicing the invention.  To exclude these embodiments as Citi proposes violates one of the central tenets of claim construction.  In particular, "where claims can reasonably [be] interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence on the contrary."  *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1277 (Fed. Cir. 2008); *see MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 007) (rejecting claim construction that would exclude embodiments); *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 445 F.3d 1348, 1353–55 (Fed. Cir. 2006) (rejecting claim construction that "excluded embodiments disclosed in the specification"); *Vanderlande Industries Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311, 1320, 1322 (Fed. Cir. 2004) (declining to limit the term

---

[4] The specification also discusses how if software is licensed on a "per user" basis then a user should be able to access it from multiple computers.  This would have to necessarily

"glide surface" to a specific embodiment where the descriptive text includes other embodiments).

Citi should not be allowed to import an example in the specification in order to drastically alter the meaning of the invention.

## V.     U.S. PATENT NO. 5,745,574

### A.  "certifying and returning the data structure"

| IV's Construction | Citi's New Construction | Court's Construction |
|---|---|---|
| Signing the certificate and returning it to the requester | Vouching for the identity of the public key owner by signing the **data structure** and returning it to the owner/requestor | Vouching for the identity of the public key owner by signing the **certificate** and returning it to the owner/requestor |

IV continues to believe that its original proposed construction for "certifying and returning the data structure" was the proper one.  But if the Court is inclined to keep its construction, then IV argues that the Court should modify it as per its submission to read "vouching for the identity of the public key owner or requestor by signing the certificate and returning it to the owner or requestor."  D.I. 84 at 8-9.

The Court endeavored to make the disputed claim terms clearer to a fact finder.  Citi's proposal undoes that.  Citi proposes to change "certificate" to "data structure" but claim 18 is directed to "a method of requesting and issuing a public key certificate."  Most importantly, the claim language properly supports the Court's construction.  Moreover, the Court's construction provides more clarity than Citi's proposed modification.  With Citi's proposed modification, the entire claim would read as follows: "at said computer process authorized as an issuing certification authority, verifying the authenticity of said request, and if authentic, vouching for the identity of the public key owner by signing the **data structure** and returning it to the owner/requestor in a certificate signature reply."  Because the context of the claim language

already concerns a "certificate" and the previous claim limitation already requires the presence

of a "data structure," the Court's tentative construction is better than the one now proposed by

Citi.

**B. "revocation list"**

| Citi's Construction | Court's Construction |
|---|---|
| A data structure identifying revoked certificates | A list identifying revoked certificates |

**C. "common point of trust"**

| Citi's Construction | Court's Construction |
|---|---|
| The lowest point in the hierarchy that is trusted by both the sender and the receiver | A point that is trusted by both the sender and the receiver |

IV did not oppose Citi's original constructions but argued that the Court's JPMC

constructions were better.  IV maintains that position even though Citi renews its arguments.

The Court's constructions are clear and do not need to be modified.

**D. "point of trust in common with"**

| IV's Construction | Citi's Construction | Court's Construction |
|---|---|---|
| Point of trust also trusted by | The lowest point in the hierarchy is trusted by | Point of trust also trusted by |

The Court construed the term as it did before, just as it did with "common point of trust."

Citi's arguments now are simply repackaged versions of what the Court already has heard and

rejected.

The entirety of Citi's argument is to point to its proposed modifications for "common

point of trust."  As Citi advocated in its briefing, it wants to apply the same construction to

"common point of trust" and "a point of trust in common with."  IV showed in the briefing that

these two phrases are directed to two different independent claims, each of which is directed to a different embodiment, and uses the different phrases in different contexts.  The structure of "lowest point in the hierarchy" is simply not relevant to claim 28.  Claim 23 requires a "lowest point" but claim 28 does not.  Thus, Citi's construction would create ambiguity as to what is being described as the "lowest point in the hierarchy" when no such structure is recognized by the claim.  Instead of requiring an iterative process like claim 23 does, claim 28 does not require checking "every computer process" nor does it do it "iteratively."  In addition, the example embodiment that provides support for claim 28 does not even mention the notion of a "lowest point" which Citi seeks to insert in the construction. '574 patent, 12:65-13:3. This is simply another attempt by Citi to read limitations from multiple unrelated embodiments of the specification into the claims. *O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *Thorner*, 669 F.3d at 1366 ("We do not read limitations from the specification into claims; we do not redefine words.").

Thus, Citi's reliance on "common point of trust" is unavailing and the Court should keep the construction that it has now twice found satisfactory.  *See Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, Case No. 1:13-cv-03777-AKH, Dkt. No. 82 at 10; Hearing Tr., 42:9-15.

Dated: June 19, 2015                                    DUNNEGAN & SCILEPPI LLC

By  /s/  William Dunnegan
    William Dunnegan (WD9316)
    wd@dunnegan.com
    350 Fifth Avenue
    New York, New York 10118
    (212) 332-8300

                                    -and-

By  /s/ Nickolas Bohl
    FEINBERG DAY ALBERTI & THOMPSON LLP
    Ian Feinberg (Cal. Bar No. 88324)
    ifeinberg@feinday.com
    Elizabeth Day (Cal Bar No. 177125)

eday@feinday.com
Nickolas Bohl (Cal Bar No. 245943)
nbohl@feinday.com
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
Direct: 650-618-4360
Fax: 650-618-4368
(admitted pro hac vice)

Attorneys for Plaintiff